736 F.2d 896
 116 L.R.R.M. (BNA) 2732, 101 Lab.Cas. P 11,083
 FEDERATION OF WESTINGHOUSE INDEPENDENT SALARIED UNIONS and
Salaried Employees Association of the Baltimore Division
v.
WESTINGHOUSE ELECTRIC CORPORATION, Appellant.
 No. 83-5765.
 United States Court of Appeals,
Third Circuit.
 Argued May 18, 1984.
Decided June 12, 1984.
 
 Alfred W. Vadnais (argued), John J. Myers, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for appellant Westinghouse Electric Corporation.
 Patrick J. Thomassey (argued), Monroeville, Pa., for appellees Federation of Westinghouse Independent Salaried Unions and Salaried Employees Association of the Baltimore Division.
 Before GIBBONS and HUNTER, Circuit Judges, and RAMBO, District Judge*.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 Westinghouse Electric Corporation appeals from an order, entered in a suit by the Federation of Westinghouse Independent Salaried Unions and the Salaried Employees Association of the Baltimore Division, pursuant to Section 301(A) of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a), directing Westinghouse to arbitrate a grievance on behalf of a former Westinghouse employee. The appeal requires that we determine what statute of limitations applies to a suit to compel arbitration in accordance with the terms of a collective bargaining agreement, whether that limitations period expired before the suit was filed, and whether the underlying dispute is arbitrable. We conclude that section 10(b) of the National Labor Relations Act, 29 U.S.C. Sec. 160(b) is the most analogous statute of limitations, that there are material issues of disputed fact as to whether the action to compel arbitration was timely under that statute, and that if the suit was timely filed the dispute is arbitrable. Thus we remand for a determination of the question of when the cause of action to compel arbitration accrued to the plaintiff unions.
 
 I.
 The Dispute
 
 2
 On June 25, 1981, Dorothea Armstrong, an employee in the Westinghouse Aerospace Division in Baltimore, was notified by the division personnel manager that she would be treated as a "voluntary quit" because she had been absent from work without explanation for several weeks. The personnel manager relied on a local supplement to the Collective Bargaining Agreement between Westinghouse and the Federation providing:
 
 
 3
 An employee who is absent without permission for a period of (5) working days, and the employe's supervisor or, in his absence, the Medical Department, has not received a report during this period giving a satisfactory reason for such absence, shall be considered as having voluntarily quit unless he can show extenuating circumstances making it impossible for him to report.
 
 
 4
 App. at 284.
 
 
 5
 On June 29, 1981 the Salaried Employees Association filed a grievance on Armstrong's behalf, claiming that she had been unjustly released, and seeking reinstatement with back pay. The grievance was filed pursuant to Section XV of the Federation-Westinghouse Collective Bargaining Agreement which provides a local grievance procedure, and, with specified exceptions, a no-strike undertaking. The grievance went through company grievance procedures, culminating, at the final in-house stage, with a denial on December 18, 1981. In the December 18, 1981 letter denying the grievance Westinghouse took the position that Armstrong, having repeatedly failed to respond to requests that she provide information about her claimed illness or return to work, should be treated as a voluntary quit.
 
 
 6
 On January 15, 1982 the Federation demanded arbitration. This demand was made pursuant to Section XV-A of the Federation-Westinghouse Collective Bargaining Agreement which provides in relevant part:
 
 
 7
 1. Grievances, other than those concerning probationary employes, which remain unsettled after the grievance procedure has been exhausted pursuant to Section XV and which protest only a disciplinary penalty, release, or discharge of an employe allegedly imposed without just cause, shall be arbitrable upon a valid request of either the Federation or the Company. In the arbitration of such grievances, the authority and jurisdiction of the arbitrator shall be limited to determining whether the Company's action was without just cause, and if so, what shall be the remedy.
 
 
 8
 2. Grievances involving any other disputes, including alleged violations of this Agreement or a local supplement hereto, shall not be arbitrable except by mutual written agreement between the Federation and the Company setting forth the specific dispute to be arbitrated.
 
 
 9
 App. at 38. On January 29, 1982, Westinghouse responded to the demand for arbitration by stating that it would not arbitrate because "[t]his dispute is not subject to demand arbitration and the Company is unwilling to process the grievance into arbitration by special agreement." Thus on January 29, 1982 Westinghouse informed the Federation that it would arbitrate under neither of the quoted arbitration clauses.
 
 
 10
 On February 1, 1982, the Federation informed Westinghouse in writing that it did not intend to pursue legal action to compel arbitration, but would, instead, authorize its Baltimore Affiliate to strike. The reference to strike authorization was made because the no strike covenant in Section XV is qualified by this provision:
 
 
 11
 The Federation may authorize an Affiliate to strike a bargaining unit in which a grievance arises provided the grievance procedure has been exhausted at the appeal level, a written request has been made for arbitration and denied in writing or a response agreeing to arbitrate is not made within fifteen (15) days after receipt of the request, and the federation notifies the Company, in writing, that it does not intend to pursue legal action seeking to compel arbitration.
 
 
 12
 App. at 36a (emphasis in original). Faced with the threat of a local strike, Westinghouse negotiated further. As a result of those negotiations it received from the Federation's General Counsel the following letter:
 
 
 13
 This confirms our telephone conversations yesterday on the above case.
 
 
 14
 I had reported to you last week that this office had forwarded the letter of February 1, 1982 to you notifying you that the Union did not intend to pursue action to compel arbitration, and authorizing the Affiliate to strike, in error. As you know, the local has taken no action with respect to the strike notice.
 
 
 15
 I suggested to you that we should agree that the said letter of February 1, 1982 may be withdrawn by us.
 
 
 16
 Your suggestion yesterday was that we should proceed to withdraw the letter of February 1, 1982 and you indicated your belief that we had the right to do so. Accordingly, I am hereby notifying you that we are withdrawing the notifications set forth in the February 1, 1982 letter, a copy of which is enclosed for your convenience. At the same time, I ask you to reconsider your denial of arbitration in this case, as your classification of it as inarbitrable as a voluntary quit is clearly without any legal justification, particularly in view of the court's opinion in the Bender case.
 
 
 17
 Also, I believe it would be justified for you to even reconsider the merits of the case at this time, in view of the terrible injustice that has resulted to Miss Armstrong.
 
 
 18
 App. at 112. On June 25, 1982 Westinghouse responded:
 
 
 19
 After various Company-Union communications subsequent to your January 15, 1982, request for arbitration of the captioned dispute, including a request that the Company reconsider its denial of arbitrability, the subject grievance has again been reviewed.
 
 
 20
 While the Company continues to believe that the dispute is not arbitrable as a matter of right under Section XV-A, Paragraph 1, it would be willing to proceed to arbitration by mutual agreement in this particular case, providing there is agreement as to the matter to be decided by an arbitrator, as noted in Paragraph 2 of Section XV-A.
 
 
 21
 To this end, I am enclosing the original and three copies of a Submission Agreement. If it is suitable to you, please sign and return the original and two copies to me for completion. I will then send you the completed original, and a copy for your files, and you could forward the original to the American Arbitration Association when requesting a panel of arbitrators under Section XV-A, Paragraph 5.
 
 
 22
 It should be understood that the enclosed Submission is offered on the condition that should it be rejected, such offer will not in any way operate or be construed to prejudice the Company's already stated position as to non-arbitrability of the subject grievance. Similarly, it is understood that your acceptance of the Submission in this specific instance will not prejudice the Federation's position as to arbitrability in any other case.
 
 
 23
 The Federation and Westinghouse were unable to agree on a form of submission for voluntary arbitration under Section XV-A, Clause 2, and on October 2, 1982 the Federation filed this suit to compel arbitration under Clause 1, of Section XV-A of the Agreement.
 
 II.
 Proceedings in the District Court
 
 24
 Westinghouse moved to dismiss the complaint on the ground that the action was time barred by the thirty day limitations period in 42 Pa.Cons.Stat.Ann. Sec. 7314(b) (Purdon 1982), governing applications to vacate arbitration awards. Distinguishing United Parcel Service Inc. v. Mitchell, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), and relying on United Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 704-05, 86 S.Ct. 1107, 1112-13, 16 L.Ed.2d 192 (1966) the district court held that the most appropriate statute of limitations was the six year time bar of 42 Pa.Cons.Stat.Ann. Sec. 5527 (Purdon 1982), governing actions for the enforcement of contracts.[1]
 
 
 25
 Thereafter, the Federation moved for summary judgment. On October 13, 1983, the district court granted that motion, and ordered Westinghouse to submit the Armstrong grievance to arbitration. This appeal followed.
 
 III.
 The Appropriate Statute of Limitations
 
 26
 When the district court denied Westinghouse's motion to dismiss on statute of limitations grounds it was without the benefit of the Supreme Court's subsequent decision in DelCostello v. Int'l. Broth. of Teamsters, --- U.S. ----, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). That important decision requires that we consider whether the rule of United Auto Workers v. Hoosier Cardinal Corp., supra, which referred actions under section 301 of the Labor Management Relations Act to state statute of limitations laws retains vitality.
 
 
 27
 DelCostello involved a suit by union members against their employers for breach of collective bargaining agreements, and against their collective bargaining representatives for breach of the duty of fair representation. Relying on United Parcel Service v. Mitchell, Inc., supra, lower courts had applied the relatively short state law statutes of limitations governing actions to vacate arbitration awards. The Supreme Court reversed, holding that the six-month statute of limitations in section 10(b) of the National Labor Relations Act, 29 U.S.C. Sec. 160(b) which establishes a six-month period for making charges of unfair labor practices to the NLRB, was the appropriate reference.[2]
 
 
 28
 The DelCostello court rejected the statutes of limitation for vacation of arbitration awards as far too short, since an employee pursuing the kind of hybrid section 301-duty of fair representation claim there presented would ordinarily be without the assistance of an expert advising him of the time within which a suit to compel arbitration should be brought. --- U.S. at ----, 103 S.Ct. at 2291. Moreover, the Court rejected Justice Stevens' suggestion that state-law statutes of limitations for legal malpractice should be used as the closest analogy to a duty of fair representation claim. Id. at ----, 103 S.Ct. at 2292. Referring to its recent decision in United Parcel Service, Inc. v. Mitchell, supra, the DelCostello majority emphasized that the system of industrial self-government encouraged by federal law, "with its heavy emphasis on grievance, arbitration, and the 'law of the shop,' could easily become unworkable if a decision which has given 'meaning and content' to the terms of an agreement ... could suddenly be called into question ... years later." Id. at ----, 103 S.Ct. at 2293, quoting Mitchell, supra 451 U.S. at 64, 101 S.Ct. at 1564. The Court therefore turned to section 10(b) as "a federal statute of limitations actually designed to accommodate a balance of interests very similar to that at stake here...." Id. A violation of the duty of fair representation was found to be substantially similar to an unfair labor practice, and section 10(b) manifested Congressional concern for "the proper balance between the national interests in stable bargaining relationships and the finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective bargaining system." Id. --- U.S. at ----, 103 S.Ct. at 2294, quoting Mitchell, supra 451 U.S. at 70, 101 S.Ct. at 1567 (Stewart, J., concurring). The Court concluded with the observations that it would disregard a state law statute of limitations "when a rule from elsewhere in Federal law provides a closer analogy than available state statutes, and when the Federal policies at stake and the practicabilities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking...." Id.
 
 
 29
 Unlike this case, in which the Federation relies solely on section 301, DelCostello presented hybrid section 301-duty of fair representation claims. Thus it was not necessary for the Court to expressly overrule United Auto Workers v. Hoosier Cardinal Corp.. In a somewhat delphic footnote, Justice Brennan observed:
 
 
 30
 In some instances, of course, there may be some direct indication in the legislative history suggesting that Congress did in fact intend that state statutes should apply. More often, however, Congress has not given any express consideration to the problem of limitations periods. In such cases, the general preference for borrowing state limitations periods could more aptly be called a sort of fallback rule of thumb than a matter of ascertaining legislative intent; it rests on the assumption that, absent some sound reason to do otherwise, Congress would likely intend that the courts follow their previous practice of borrowing state provisions. See also Auto Workers v. Hoosier Corp., 383 U.S. 696, 703-704, 86 S.Ct. 1107, 1111-1112, 16 L.Ed.2d 192 (1966).
 
 
 31
 Justice Stewart pointed out in Mitchell that this line of reasoning makes more sense as applied to a cause of action expressly created by Congress than as applied to one found by the courts to be implied in a general statutory scheme--especially when that general statutory scheme itself contains a federal statute of limitations for a related but separate form of relief. 451 U.S. at 68, n. 4, 101 S.Ct. at 1564, n. 4 (opinion concurring in the judgment); see also McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 228-229, 78 S.Ct. 1201, 1206, 2 L.Ed.2d 1272 (1958) (BRENNAN, J., concurring). The suits at issue here, of course, are amalgams, based on both an express statutory cause of action and an implied one. See infra, at 2290-2291 and n. 14. We need not address whether, as a general matter, such cases should be treated differently; even if this action were considered as arising solely under Sec. 301, the objections to use of state law and the availability of a well-suited limitations period in Sec. 10(b) would call for application of the latter rule.
 
 
 32
 --- U.S. at ----, n. 12, 103 S.Ct. at 2287, n. 12 (emphasis added). The only clear signal that can be read from footnote 12 in DelCostello is that the applicability of Hoosier Cardinal to pure section 301 suits is now an open question. Those courts which have considered that question have evidenced uncertainty. In McPeek v. Dayton Forging and Heat Treating Co., 574 F.Supp. 300, 304 (S.D.Ohio 1983) a case in which the plaintiff asserted that a duty of fair representation claim was also a straight-forward breach of collective bargaining agreement claim, the court observed in dicta that "even if Plaintiffs' suit were somehow capable of being construed as a non-hybrid Sec. 301 action, only against the employer, it would not follow that NLRA Sec. 10(b) would not govern." In United Brotherhood of Carpenters & Joiners v. FMC Corp., 724 F.2d 815 (9th Cir.1984), considering a union's suit to vacate an arbitration award, the court applied a state 20-day statute of limitations for such actions. Arguably, in suits to vacate an arbitration award that result is consistent with the policy relied on by the DelCostello majority of prompt termination of industrial disputes. In International Union of Elec. Radio & Machine Workers v. Ingram Mfg. Co., 715 F.2d 886, 888-89 (5th Cir.1983), and Derwin v. General Dynamics Corp., 719 F.2d 484, 487 (1st Cir.1983), both involving suits by unions under Sec. 301 to enforce arbitration awards, the courts applied much longer general state statutes of limitations. Here, too, the results are arguably consistent with the DelCostello policy of stability in industrial relations, since the Union may reasonably assume that employers will abide by arbitration awards and thus preserve stability in the bargaining relationship. No-post DelCostello case has been called to our attention dealing with the issue presented here: a union's section 301 suit to compel arbitration.
 
 
 33
 We hold that essentially for the same reasons relied on in DelCostello for borrowing section 10(b) as the statute of limitations in hybrid suits, that section should be borrowed for application to actions under section 301 to compel arbitration. Application of a six-year state statute of limitations stretches out industrial disputes far longer than most recent cases have deemed desirable.[3] Application of the extremely short Pennsylvania statute of limitations governing actions to confirm arbitration awards unnecessarily shortens the time during which parties to a collective bargaining agreement may, after exhaustion of in-house grievance steps, attempt an informal resolution of disputes. Moreover, grievances often involve an alleged activity which is also an unfair labor practice over which the National Labor Relations Board has jurisdiction. The Board frequently defers the consideration of such charges to the arbitral forum if it is available. See Spielberg Mfg. Co., 112 N.L.R.B. 1080, 1082 (1955); Collyer Insulated Wire, 192 N.L.R.B. 837, 842 (1971). Thus it makes a great deal of sense to have a common statute of limitations for unfair labor practice charges and for suits to compel arbitration.[4]
 
 
 34
 We recognize that there is an interaction between the statute of limitations governing the Union's cause of action to compel arbitration and the employee's cause of action for breach of a duty of fair representation. It is clear, however that the two causes of action arise at different times and out of different circumstances. The Union's cause of action to compel arbitration arises when the employer takes an unequivocal position that it will not arbitrate. The employee's hybrid cause of action arises when the Union takes an unequivocal position that it will not seek arbitration, or when the statute of limitations on its cause of action has run. Thus, by holding that the section 10(b) six month statute of limitations governs both the Union's section 301 cause of action and the employee's hybrid cause of action we achieve a maximum period of twelve months within which a grievance which an employer refuses to arbitrate may result in litigation. That result is, we believe, consistent with the policies identified in the DelCostello opinion.
 
 IV.
 Application of Section 10(b)
 
 35
 Because the district court held that the Pennsylvania six year statute of limitations applied, it did not consider precisely when the Federation's cause of action to compel arbitration arose. Westinghouse contends that we may nevertheless affirm, because as a matter of law that cause of action arose when the Union received its January 29, 1982 letter. Thus, Westinghouse urges, the cause of action was time barred no later than July 31, 1982. The Federation contends that had nothing more occurred after January 29, 1982, Westinghouse would be right, but that the negotiations outlined in Part I above establish that Westinghouse did not finally refuse to arbitrate until some time in June of 1982. If the Court so concluded, the October 1982 suit would be timely. In light of the correspondence outlined in part I, we conclude that the date on which Westinghouse finally refused arbitration presents a material issue of disputed fact, which must be resolved in the first instance by the trial court. Thus unless we can hold, as a matter of law, that the underlying dispute clearly lies outside the scope of the arbitration clause, a remand for resolution of that fact issue is required.
 
 V.
 The Underlying Dispute is Arbitrable
 
 36
 Westinghouse contends that the trial court erred in granting summary judgment against it on the issue of arbitrability, because clause 1 of Section XV-A does not include Armstrong's grievance among those for which compulsory arbitration is available. It urges, moreover, that summary judgment was granted on the erroneous assumption that the question of arbitrability is for the arbitrator, not for the court.
 
 
 37
 It is not at all clear that the district court proceeded on the assumption that the question of arbitrability was for the arbitrators rather than for the court, although ambiguous language in the court's opinion might be so construed. The ambiguity is of no moment for the disposition of the appeal, however, because our review of a summary judgment is plenary. In re Japanese Electronic Products Antitrust Litigation, 723 F.2d 238, 257 (3d Cir.1983). Thus we must make an independent determination of the question of arbitrability.
 
 
 38
 It is Westinghouse's position that Armstrong's termination was not a "disciplinary penalty, release, or discharge of an employe[e] allegedly imposed without just cause," to which clause 1 applies, but a "voluntary quit." That, however, is a matter of dispute between the parties going to the merits of the grievance, which alleges that the termination was in fact involuntary and without just cause. Clearly this factual dispute is one for which the parties selected an arbitral forum, for Westinghouse's "voluntary quit" position is inextricably interwoven with the propriety of Armstrong's conduct. Thus we cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960). Doubts concerning arbitrability must be resolved in favor of arbitration. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., --- U.S. ----, ---- - ----, 103 S.Ct. 927, 941-942, 74 L.Ed.2d 765 (1983). The fact that the merits of the underlying dispute and the question of arbitrability are interrelated does not enlarge the court's authority to resolve the grievance. Sharon Steel Corporation v. Jewell Coal & Coke Company, 735 F.2d 775, at 778 (3d Cir.1984). Thus we conclude that the trial court did not err in granting summary judgment that the underlying dispute is arbitrable.
 
 V.
 Conclusion
 
 39
 The judgment appealed from will be reversed and the case remanded for a determination of the date when Westinghouse finally declined to arbitrate, and whether in light of that determination the action to compel arbitration is barred by section 10(b) of the Labor Management Relations Act. If the action is not time-barred arbitration should be ordered.
 
 
 
 *
 Hon. Sylvia H. Rambo, United District District Judge for the Middle District of Pennsylvania, sitting by designation
 
 
 [1]
 The Court noted that a Maryland statute might be an appropriate reference, but found no significant difference between the law of the forum state, Pennsylvania, and that of the place of employment, Maryland
 
 
 [2]
 In Scott v. Local 863, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, et al., 725 F.2d 226, 227 (3d Cir.1983) we held that the DelCostello holding should be applied retroactively to district court decisions made before it was announced
 
 
 [3]
 See, e.g., Service Employees Int'l Union v. Office Center Services, 670 F.2d 404, 409 (3d Cir.1982); Liotta v. Nat'l Forge Co., 629 F.2d 903 (3d Cir.1980), cert. denied 451 U.S. 970, 101 S.Ct. 2045, 68 L.Ed.2d 348 (1981); Assad v. Mount Sinai Hospital, 703 F.2d 36 (2d Cir.), vacated sub nom. Dist. 1199, Nat'l Union of Hospital Employees v. Assad, --- U.S. ----, 104 S.Ct. 54, 78 L.Ed.2d 73 (U.S. Sept. 27, 1983); Lumber Prod. & Indust. Workers Local 3038 v. Champion Int'l Corp., 486 F.Supp. 812 (D.Mont.1980)
 
 
 [4]
 The same statute of limitations probably should apply to employer section 301 suits to compel arbitration. That issue is not likely to arise with any frequency, however, since employers usually couple requests for such relief with requests for Boys Market injunctions, and are not likely to delay in instituting such actions