## FEDERATION OF WESTINGHOUSE INDEPENDENT SALARIED UNIONS and The Association of Westinghouse Salaried Employees, Plaintiffs,

v.

## WESTINGHOUSE ELECTRIC CORPORATION, Defendant.

### Civ. A. No. 84–1426.

United States District Court, W.D. Pennsylvania.

Dec. 5, 1984.

Patrick J. Thomassey, Monroeville, Pa., for plaintiffs.

Walter DeForest, Philip Miscimmarra, Reed, Smith, Shaw & McClay, Stuart Saltman, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

TEITELBAUM, Chief Judge.

The Federation of Westinghouse Independent Salaried Unions (Federation) and its local affiliate, the Association of Westinghouse Salaried Employees (AWSE), (collectively unions) brought this action against Westinghouse Electric Corp. (Westinghouse) under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, alleging a violation of the collective bargaining agreement. The unions contend Westinghouse violated the collective bargaining agreement by failing to provide salary increases to employees whose positions were reclassified. Westinghouse moves for summary judgment contending this action is barred by the statute of limitations. For the reasons set forth below the motion will be denied.

Following an August 1, 1982 job reclassification, AWSE filed grievances at the local level on behalf of six employees whose jobs had been reclassified contesting Westinghouse's failure to provide salary increases (first set of grievances). On March 23, 1983 the first set of grievances was filed as Federation grievances at the national level. On May 20, 1983 Westinghouse denied the first set of grievances and on May 24, 1983 the Federation notified Westinghouse that Westinghouse's answer to the first set of grievances was unsatisfactory. On June 13, 1983 the Federation requested arbitration of the first set of grievances and on June 14, 1983 Westinghouse refused to agree to arbitration.

According to the unions, on April 20, 1983 the Federation met with Westinghouse to discuss the first set of grievances and Westinghouse suggested that the grievances be referred back to local management to attempt to slowly phase in salary increases due the reclassified employees.

On May 23, 1983 AWSE filed a second set of grievances at the local level on behalf of the six employees named in the first set of grievances plus an additional four employees whose jobs had also been reclassified (second set of grievances).

On September 8, 1983 grievances on behalf of seven of these employees, including three employees named in the first set of grievances and the four employees added in the second set, were filed at the national level. On November 11, 1983 Westinghouse reiterated its prior position and denied the second set of grievances and on November 16, 1983 the Federation notified Westinghouse that Westinghouse's answer to the second set of grievances was unsatisfactory. On December 7, 1983 the Federation requested arbitration of the second set of grievances and on December 13, 1983 Westinghouse refused to agree to arbitration.

The present action was filed June 12, 1984.

The unions contend the action was timely filed within six months of December 13, 1984. The unions contend the statute of limitations starts to run when the grievance and arbitration procedure provided in the collective bargaining agreement is fully exhausted.

The unions contend that as to the four employees named only in the second set of

grievances, the second set is the point of reference. Using the second set of grievances as the reference point, the unions contend the statute of limitations did not start to run until December 13, 1983 when Westinghouse refused to arbitrate the second set of grievances.

The unions further contend Westinghouse is estopped from raising the statute of limitations because of its representation at the April 20, 1983 meeting. The unions further contend this representation raises a factual issue as to when the unions knew or should have known of Westinghouse's breach of the collective bargaining agreement.

Westinghouse contends the action was not timely filed within six months of the last possible point of reference, November 16, 1983. Westinghouse contends the statute of limitations starts to run when the grievance procedure provided in the collective bargaining agreement is fully exhausted and that a demand for voluntary arbitration does not affect this.

Westinghouse contends the first set of grievances is the point of reference. Westinghouse contends the second set of grievances is merely a repeat of the first set or, at most, a request for reconsideration which does not affect the statute of limitations. Westinghouse contends the four employees named only in the second set of grievances were affected by the reclassification in the same manner as the employees named in the first set and were therefore bound by the disposition of the first set. Westinghouse contends these four employees should not be able to avoid the bar of the statute of limitations because of the unions' failure to name all affected employees in the first set of grievances. Using the first set of grievances as the reference point, Westinghouse contends the statute of limitations started to run May 24, 1983 when the grievance procedure was fully exhausted.

However, even if the second set of grievances is used as the reference point, Westinghouse contends the statute of limitations started to run November 16, 1983 when the grievance procedure was fully exhausted.

Westinghouse further contends the unions' estoppel argument is unsupported as a matter of fact or law. Westinghouse denies the existence of factual issues which would preclude the grant of summary judgment.

*Estoppel*

The unions contend Westinghouse is estopped from raising the statute of limitations because of its representation at the April 20, 1983 meeting. On April 20, 1983 Federation president Richard Mori met with Westinghouse union relations consultant R.G. McQueen to discuss the first set of grievances, which had been filed at the national level on March 23, 1983. According to Mori:

> [McQueen] suggested that the [salary] rate reviews be referred back to local management in an attempt to "slowly phase in the increases due those people."
>
> After my discussion with Mr. McQueen, I assumed that the matters were to be worked out at the local level and that the rate reviews would be re-filed letting the timeliness conditions of the contract expire as to the initial set of rate review grievances.

After this meeting a second set of grievances was filed at the local level on behalf of the employees named in the first set of grievances plus additional employees.

It is likely that McQueen's statement was intended to and did cause the unions to forebear suit on the first set of grievances. However, McQueen's statement could not have reasonably caused the unions to forebear suit on the second set of grievances. Mori assumed the timeliness conditions would "expire as to the *initial* set of rate review grievances" (emphasis added). Further, the timing of this suit suggests that it was not reliance on McQueen's statement that delayed suit on the second set of grievances, but rather it was the unions' belief as to when the statute of limitations started to run that determined its filing: the unions contend the statute of limitations

started to run when the grievance and arbitration procedure was fully exhausted and suit was filed on the last day of a limitations period starting with Westinghouse's refusal to arbitrate the second set of grievances.

For these reasons the second set of grievances will be considered as the reference point for the statute of limitations.

### Accrual of cause of action

The unions and Westinghouse agree that the applicable statute of limitations in this case is the six month period designated in section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *See Federation of Westinghouse Independent Salaried Unions v. Westinghouse Electric Corp.*, 736 F.2d 896 (3d Cir.1984).

■ "A cause of action ordinarily accrues when 'plaintiff could first have successfully maintained a suit based on that cause of action.'" *Santos v. District Council of New York City*, 619 F.2d 963, 968–69 (2d Cir.1980) quoting *Bell v. Aerodex, Inc.*, 473 F.2d 869, 873 (5th Cir.1973). As a general rule federal law requires the exhaustion of the grievance procedure in the collective bargaining agreement before a section 301 suit may be maintained. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967).

Here the collective bargaining agreement sets forth a multi-level grievance procedure, and identifies the point at which it is fully exhausted, and then goes on to provide for mandatory arbitration of some disputes and voluntary arbitration of others.

Section XV(2)(D)(2) states, in part:

When an Affiliate refers a grievance to the national appeal level through the Federation ..., the grievance procedure shall be considered as having been fully exhausted only after the Federation advises the Company in writing that the Company's reply at the national appeal level is unsatisfactory.

Section XV(E) states:

Should the parties fail to settle any grievance after exhausting the grievance procedure then the provisions of Section XV–A–Arbitration shall apply.

Section XV–A(1) states:

Grievances, other than those concerning probationary employees, which remain unsettled after the grievance procedure has been exhausted pursuant to Section XV and which protest only a disciplinary penalty, release, or discharge of an employee allegedly imposed without just cause, shall be arbitrable upon a valid request of either the Federation or the Company.

Section XV–A(2) states:

Grievances involving other disputes, including alleged violations of this Agreement or a local supplement thereto, shall not be arbitrable except by mutual written agreement between the Federation and the Company setting forth the specific dispute to be arbitrated.

■ It is not disputed that the grievances in this case were not subject to mandatory arbitration under Section XV–A(1). It is assumed that absent a request for voluntary arbitration under Section XV–A(2) the statute of limitations started to run when the multi-level grievance procedure was fully exhausted under Section XV(2)(D)(2). The issue is whether the request for voluntary arbitration removed the bar of the statute of limitations.

The national policy favoring arbitration of labor disputes, *see United Steelworkers of America v. N.L.R.B.*, 530 F.2d 266, 276–78 (3d Cir.1976), compels the conclusion that a request for voluntary arbitration tolls the statute of limitations until the other side refuses to arbitrate. A contrary result would discourage voluntary arbitration and penalize its exercise. If a request for voluntary arbitration did not toll the statute of limitations, a grievant would have to choose whether to 1) forego voluntary arbitration in favor of immediate judicial intervention; or 2) pursue voluntary arbitration but if it is refused face a limitations period shorter than mandated; or 3) proceed on two fronts, with both voluntary arbitration and a lawsuit.

Further, because voluntary arbitration must be requested within thirty days after

exhaustion of the multi-level grievance procedure, and a response made within fifteen days thereafter, the conclusion that the request for voluntary arbitration tolls the statute of limitations until the request is refused does not offend the policy of prompt resolution of labor disputes.

*Nicely v. United States Steel Corp.*, 574 F.Supp. 184 (W.D.Pa.1983) is distinguishable. In *Nicely* it was held that discussion with the NLRB regarding unfair labor practice charges did not toll the statute of limitations for a section 301 action. The court stated that where two separate parallel avenues of relief are provided pursuit of one course of action did not toll the running of the statute of limitations as to the other. In *Nicely* the discussion of unfair labor practice charges with the NLRB was a course of action completely outside the framework of the collective bargaining agreement. Here, in contrast, the collective bargaining agreement provides the basis for the unions' request for voluntary arbitration. *See Larry v. Penn Truck Aids, Inc.*, 94 F.R.D. 708, 716 n. 12 (E.D. Pa.1982).

Westinghouse's motion for summary judgment will be denied. An appropriate order shall be entered.