**COMMUNICATIONS WORKERS OF AMERICA, Appellant,**

v.

**AMERICAN TELEPHONE AND TELEGRAPH COMPANY.**

No. 92–7103.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 22, 1993.

Decided Dec. 17, 1993.

888

James B. Coppess, with whom Gerard C. Boyle, Washington, DC, was on the brief, for appellant.

Stephen W. Robinson, with whom Clifford R. Oviatt, Jr., Washington, DC, was on the brief, for appellee.

Before: SILBERMAN and RANDOLPH Circuit Judges; COFFIN,* Senior Circuit Judge, United States Court of Appeals for the First Circuit.

Opinion for the Court filed by Senior Circuit Judge COFFIN.

COFFIN, Senior Circuit Judge:

This is an action brought by the Communications Workers of America (union) under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, seeking to compel American Telephone and Telegraph Company (AT & T) to engage in arbitration concerning a grievance filed on behalf of an employee. The issue is whether the complaint seeking to compel arbitration was timely filed. The answer depends on whether the applicable law is the six-month federal statute of limitations borrowed from § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b), or the three-year period governing contracts in the District of Columbia, D.C.Code § 12–301(7). The district court, noting the extensive litigation in other circuits and the absence of controlling authority in this circuit, sensibly passed the issue to this court without any elaborating opinion. It followed the authority of seven other courts of appeals which have held applicable the six-month period under § 10(b), and dismissed the union's complaint with prejudice. Discerning no persuasive reason why we should create a significant split among the circuits, we affirm.

The essential facts are as follows: An AT & T employee was allegedly wrongfully terminated. The union instituted a challenge to the discharge and won an arbitration award ordering the employee's reinstatement. However, during the employee's absence, his position and pay levels were upgraded. Notwithstanding this, AT & T refused to reinstate him in the upgraded position with compensation for lost wages at the higher level.

In April 1989, the union instituted a new grievance. On November 28, 1989, the union referred the grievance to arbitration. Two months later, on February 8, 1990, AT & T refused arbitration. Eight months later, on December 5, 1990, the union filed the instant complaint seeking to compel arbitration. AT & T filed a motion to dismiss, and the district court subsequently issued an order dismissing the complaint with prejudice. The union appealed.

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

We first take note of the present state of the law in the federal circuits on the appropriate statute of limitations to apply in an action to compel arbitration under § 301. Seven circuits have adopted the § 10(b) six-month period.[1] The Eleventh Circuit has applied the § 10(b) period where the state statute of limitations period was six years in *International Association of Machinists v. Allied Products Corp.*, 786 F.2d 1561 (11th Cir.1986), but it rejected the six-month period in favor of a slightly longer one-year state limitations period in *United Paperworkers International v. ITT Rayonier, Inc.*, 931 F.2d 832 (11th Cir.1991). This overwhelming, almost unanimous circuit support for the § 10(b) standard has achieved a uniformity from which we would not lightly depart. The appellant, accordingly, bears a considerable burden in attempting to persuade us that we should in effect step forward as the only circuit unambiguously to endorse recourse to analogous state limitation periods.

Our guidance in determining the appropriate limitations period, since there is no provision in the LMRA applicable to § 301, is set forth in *DelCostello v. Teamsters*, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294–95, 76 L.Ed.2d 476 (1983). In that case, the Court laid down the following prescription:

> [W]hen a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law.

The Court in *DelCostello* was faced with two consolidated hybrid § 301 suits, each brought by the union members against their employers alleging breach of contract and against their union because of a failure to fairly represent them in an arbitration. Both companies and unions had agreed upon settlements, which plaintiffs sought to vacate. In each of the cases the § 10(b) limitations period had expired.

The Court refused to follow the earlier authority of *Auto Workers v. Hoosier Cardinal*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), which, in a case involving arbitration, applied a state limitations period to a § 301 action seeking vacation pay benefits allegedly due under the collective bargaining agreement. The Court was sensitive to the fact that the fair representation case before it constituted a direct challenge to an existing settlement and that the allegation of the union's breach of duty of fair representation affected the entire relationship between the company and the union. It said:

> This system, with its heavy emphasis on grievance, arbitration, and the "law of the shop," could easily become unworkable if a decision which has given "meaning and content" to the terms of an agreement, and even affected subsequent modifications of the agreement, could suddenly be called into question as much as [three] years later.

462 U.S. at 169, 103 S.Ct. at 2293 (quoting *United Parcel Serv. v. Mitchell*, 451 U.S. 56, 63–64, 101 S.Ct. 1559, 1564–65, 67 L.Ed.2d 732 (1981)).

Accordingly, the Court concluded that the § 10(b) limitations period of six months was the more appropriate period because of its consistency with the policy favoring the grievance-arbitration dispute resolution system. The later case of *Reed v. United Transportation Union*, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989), involved an issue under Title I of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(2), relating to strengthening internal union democracy—something that the Court recognized as essentially a Bill of Rights kind of claim. The Court applied a three-year state limitations period reasoning

---

1. *Communications Workers of Am. v. Western Elec. Co., Inc.*, 860 F.2d 1137 (1st Cir.1988); *Associated Brick Mason Contractors of Greater New York v. Harrington*, 820 F.2d 31 (2d Cir. 1987); *Federation of Westinghouse Independent Salaried Unions v. Westinghouse Elec. Corp.*, 736 F.2d 896 (3d Cir.1984); *Aluminum, Brick and Glassworkers Int'l Union Local 674 v. A.P. Green Refractories, Inc.*, 895 F.2d 1053 (5th Cir.1990); *McCreedy v. Local Union No. 971*, 809 F.2d 1232 (6th Cir.1987); *United Food & Commercial Workers Local 100A v. John Hofmeister and Son, Inc.*, 950 F.2d 1340 (7th Cir.1991); *General Teamsters Union Local No. 174 v. Trick & Murray, Inc.*, 828 F.2d 1418 (9th Cir.1987).

that the issue was "not directly related in any way to collective bargaining or dispute settlement under a collective-bargaining agreement." *Id.* at 330, 109 S.Ct. at 629.

Pursuing the *DelCostello* dual inquiry, we ask first whether the "state" statute, the District of Columbia Uniform Arbitration Act, D.C. CODE ANN. §§ 16–4319, 4301, 4302(a) (1989),[2] provides a close analogy to the action in the instant case. Inasmuch as § 16–4301 specifically makes the Act applicable "to arbitration agreements between employers and employees or between their respective representatives," we assume that the District of Columbia statute meets this first requirement. Having arguably cleared this first hurdle, appellant bears the heavy burden of convincing us not to follow the seven other circuits that have already held that the six-month federal law period created by § 10(b) is significantly more appropriate than analogous state law periods. *See Del-Costello*, 462 U.S. at 172, 103 S.Ct. at 2294–95.

In answering this question, we shall attempt to identify the pros and cons contained in the arguments of the parties and the decided cases. We first address the federal policy at stake, perhaps the most critical and relevant object of inquiry. Appellant argues the following points: a suit to compel arbitration does not threaten the dispute resolution process but rather seeks to advance it; the local limitations period allows greater opportunity to bring a suit to compel and, thereby, vindicates the policy supporting arbitration; a shorter statute is likely to encourage reluctant parties to take evasive action and stonewall in the hopes of delaying suits to compel beyond the limitations period, thus forcing parties desirous of arbitration to bring premature suits.

We are, however, persuaded to the contrary by the following considerations. In the first place, a lengthy limitations period merely extends the time during which the dispute resolution system effectuated by arbitration remains in limbo, with increased possibility of memories fading, witnesses becoming un-available, and documentary evidence disappearing. Moreover, such a period of purgatory may well interfere with intervening collective bargaining negotiations. In any event, the relationship between an employer and a union would not seem to be strengthened by a prolonged period of uncertainty. *See Teamsters Union Local 315 v. Great Western Chem. Co.*, 781 F.2d 764, 766 (9th Cir.1986) ("A long period of controversy ... can poison the relationship between the contracting parties....").

Perhaps more important, there is in reality no realistic likelihood of a party stonewalling and engaging in evasive action to such an extent as to trigger a premature suit to compel arbitration. As the court observed in *Communications Workers of America v. Western Electric Co.*, 860 F.2d 1137, 1144 (1st Cir.1988), "[a]fter management has unequivocally refused to arbitrate, the likelihood of further concessions seems highly problematic."

On the latter point, we have but to look to the facts in this case. In the first place, there was a seven-month period following the filing of a grievance before the matter was even referred to arbitration. This allowed considerable time for appellant to explore the attitude of AT & T and possibly to resolve the issue. Second, there was a two-month period between appellant's request for arbitration and AT & T's refusal. Most critically, there was an eight-month period following AT & T's flat refusal before filing of the complaint. The union cannot reasonably claim that it was in such doubt about AT & T's basic position that it was lured into a fatal delay. We, therefore, see no great difficulty or injustice resulting from the application of a six-month period of limitations.

We would add that we have been presented with no suggestion that in the past nine years since the Third Circuit adopted § 10(b) as the standard, *Federation of Westinghouse Independent Salaried Unions v. Westinghouse Electric Corp.*, 736 F.2d 896 (3d Cir. 1984), there has been any erosion or weakening of grievance-arbitration as a vehicle for

---

**2.** Appellant asserts, without opposition, that an action under this Act to compel arbitration would be considered an action in contract, its limitation period therefore being governed by D.C. CODE ANN. § 12–301(7) (1989).

resolving disputes. Finally, we cannot avoid recognizing that there is a certain value in achieving uniformity among the federal circuits in applying the same time limitations to suits to compel arbitration. *United Food & Commercial Workers Local 100A v. John Hofmeister and Son, Inc.*, 950 F.2d 1340, 1348 (7th Cir.1991) ("[T]here is a pressing need for a uniform rule to avoid ... expensive 'judicialization' of the arbitral process."). In short, we see no reason to reject the judgment of the seven circuits which have since adopted the § 10(b) standard that federal labor policy is supported by recourse to a six-month limitation period.

A second, if subsidiary, line of inquiry advanced by appellant, perhaps under *DelCostello*'s "practicalities of litigation," is the alleged inconsistency in assigning different limitation periods to various types of actions brought under § 301. We would start by noting the salient consistency with the limitations period that governs challenges to unfair labor practices under the NLRA—that which proved decisive in *DelCostello*. *See, e.g., Associated Brick Mason Contractors of Greater New York v. Harrington*, 820 F.2d 31, 37 (2d Cir.1987) (some grievances involve activity that also may constitute alleged unfair labor practices); *Federation of Westinghouse Independent Salaried Unions*, 736 F.2d at 902 (same).

Appellant seeks to make much of the actions to vacate or confirm arbitration awards, which usually have been held to be subject to analogous state limitations periods rather than to the six-month § 10(b) requirement. But it appears that in actions to vacate arbitration awards, the alternative to the § 10(b) period was a much shorter time; courts have deemed it more appropriate to require strict promptness in signalling dissatisfaction with an award as a means of supporting the arbitration process. *See, e.g., Posadas de Puerto Rico Associates v. Asociacion de Empleados de Casino de Puerto Rico*, 873 F.2d 479, 483–84 (1st Cir.1989) ("[A] 6–month period would be grossly anomalous if applied to vacation actions, allowing more than twice the lead time vouchsafed by nearly all the states.").

The argument concerning actions to enforce arbitral awards, which usually have been left to state limitation requirements, is perhaps closer. But we think that at bottom it does not prevail. As the Second Circuit stated in *Associated Brick Mason Contractors of Greater New York*, 820 F.2d at 37, "there is little or no uncertainty concerning the status of a grievance after an arbitrator issues an award and before an action to enforce that award is filed." And, as the First Circuit said in *Derwin v. General Dynamics Corp.*, 719 F.2d 484, 490 (1st Cir. 1983), in upholding an open-ended state limitations period for confirmation suits:

> Th[e] tendency ... to encourage private settlement would, if anything, be undermined if [a statute] contained a strict limitations period for actions to confirm. If the prevailing party failed to obtain a confirmatory decree within the limitations period, the award would become unenforceable. This prospect would force the prevailing party to undergo the expense and delay of suing to confirm the award, even where the other party had agreed in good faith that the award was final and binding.

.      .      .      .      .

Since a relatively lengthy period for actions to confirm does not threaten the finality of arbitral awards, we see no basis for departing from the ordinary presumption favoring the application of state statutes of limitations to actions arising under section 301.

While one might cavil at the weight of this logic, we also must take note of the widely recognized difference in the time periods allowed for motions to vacate awards and those applicable to motions to confirm. For example, under the United States Arbitration Act, actions to vacate awards must be brought within three months, 9 U.S.C. § 12, while actions to confirm awards must be brought within one year, 9 U.S.C. § 9.

Finally, appellant argues that a six-month period for actions to compel is inconsistent with the general state contract periods that have been held applicable to non-arbitral contract claims. Here, however, the circuits have adopted a differential approach and have viewed actions on such non-arbitral claims as "purely ... breach of contract ac-

tion[s]," *Cabarga Cruz v. Fundacion Educativa Ana G. Mendez*, 822 F.2d 188, 191 (1st Cir.1987), not involving the private dispute resolution system. Or if they do so regard such contract claims, the § 10(b) six-month period is made applicable. *See Woosley v. Avco Corp.*, 944 F.2d 313, 318 (6th Cir.1991).

In general, we view most of appellant's arguments based on inconsistencies in the treatment of § 301 claims as unpersuasive. Even, however, if we concede that there remains some inconsistency in rationale governing the application of limitations periods to various kinds of actions, we conclude that it falls far short of the threshold showing that would lead us to reject the holdings of the seven circuits that have adopted a firm rule on this question, thereby to destroy desirable intercircuit uniformity.

The district court's order of dismissal is affirmed.