**COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, Plaintiff, Appellant,**

v.

**WESTERN ELECTRIC COMPANY, INC., Defendant, Appellee.**

**No. 88–1437.**

United States Court of Appeals, First Circuit.

Heard: Sept. 14, 1988.

Decided Nov. 10, 1988.

James B. Coppess, Washington, D.C., with whom Nathan S. Paven, Quincy, Mass., was on brief for plaintiff, appellant.

David J. Kerman with whom Richard P. Ward and Ropes & Gray, Boston, Mass., were on brief for defendant, appellee.

Before TORRUELLA and SELYA, Circuit Judges, and ATKINS,* Senior District Judge.

SELYA, Circuit Judge.

In this proceeding, plaintiff-appellant Communications Workers of America (CWA), a labor union, attempts to convince us that the federal district court erred in dismissing its suit against defendant-appellee Western Electric Company[1] as time-barred. We are not persuaded.

I

In October 1979, Western revised the job description for the "tester technician" position at its plant in North Andover, Massachusetts. The company decided that these

technicians—who inspect, test, and troubleshoot electronic switching systems—were properly classified in Grade 38. Dismayed by this taxonomy (which they considered ungenerous), employees in rank asked that the job be restudied and regraded. On November 5, 1980, after further evaluation, Western reaffirmed Grade 38 as appropriate. Mightily miffed, the employees sought the union's aid and succor. On April 14, 1981, CWA requested that Western reconsider and further review ensued. On May 20, the company responded that the rating was suitable. The union then asked for a chance to discuss the grade with appellee's human resources manager. By letter dated September 22, 1981 that plenipotentiary advised CWA that Western had made yet another reappraisal of the job description, but that the classification would stand.

In the face of this adamantine display of corporate constancy, CWA began to load the warheads. That November, a union representative requested an extension of the period allotted for seeking arbitration. At month's end, Western responded that it considered the matter non-arbitrable under the terms of the collective bargaining agreement. CWA submitted a second extension request on January 15, 1982; it received the same (negative) rejoinder. On January 20, the union demanded arbitration. In a letter dated March 29, 1982 Western rejected the demand, asserting for the third time that the dispute was not arbitrable. On April 9, the union made yet another demand for arbitration. It was similarly rejected.

CWA filed suit on October 20, 1982 to compel arbitration under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. The district court rejected the initiative on temporal grounds. It allowed Western's motion for summary judgment, reasoning that, by virtue of the Supreme Court's holding in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476

---

* Of the Southern District of Florida, sitting by designation.

1. The appellee, which we call "Western" for purposes of this opinion, is now known as AT & T Technologies, Inc.

(1983), a six-month statute of limitations borrowed from § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b), governed the action. Because—as CWA concedes—more than six months elapsed between the employer's categorical rejection of arbitration and the union's suit to enforce the anodyne, plaintiff's complaint was in the court's view time-barred.

## II

Section 301 of the LMRA extends federal jurisdiction to "[s]uits for violation of contracts between an employer and a labor organization...." 29 U.S.C. § 185(a). It does not, however, establish a limitation period within which such actions may be instituted. Consequently, where section 301 is implicated, courts must " 'borrow' the most suitable statute or other rule of timeliness from some other source." *DelCostello*, 462 U.S. at 158, 103 S.Ct. at 2287. When borrowing, courts generally look first to the neighbor's cupboard; in the ordinary case, federal courts apply the most closely analogous state-law statute of limitations. Illustrative of this principle is *Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). There, the Supreme Court decided that a section 301 suit to recover accumulated vacation pay so "closely resemble[d] an action for breach of contract cognizable at common law," *id.* at 705 n. 7, 86 S.Ct. at 1113 n. 7, that the six-year statute of limitations created by Indiana law for suits upon unwritten contracts properly applied. *Id.* at 706–07, 86 S.Ct. at 1113–14. For another example of the principle, we need look no further than *Cabarga Cruz v. Fundacion Educativa Ana G. Mendez*, 822 F.2d 188 (1st Cir.1987). There, we applied Puerto Rico's contract statute of limitations to a wrongful discharge suit that was "in essence, purely a breach of contract action against the employer...." *Id.* at 191.

But the glance in the direction of the state-law cupboard should not be an automatic or reflexive one. In *DelCostello*, the Court stressed that state law will not inevitably provide the most suitable limitation period:

> [W]hen a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law.

*DelCostello*, 462 U.S. at 172, 103 S.Ct. at 2294. *DelCostello* heralded a subtle shift in the Court's thinking, indicating a willingness to borrow more freely from the federal-law cupboard when two preconditions are met: (1) some federal rule of limitations "provides a closer analogy" than state alternatives, and (2) "the federal policies at stake and the practicalities of litigation" render the federal rule more suitable. This more flexible approach can be seen in a variety of post-*DelCostello* settings. *See, e.g., Agency Holding Corp. v. Malley–Duff & Associates*, 483 U.S. 143, 107 S.Ct. 2759, 2762–63, 97 L.Ed.2d 121 (1987) (borrowing Clayton Act statute of limitations for civil RICO actions brought under 18 U.S.C. § 1964); *Occidental Chemical Corp. v. International Chemical Workers Union*, 853 F.2d 1310, 1316 (6th Cir.1988) (concluding that three-month period in United States Arbitration Act, 9 U.S.C. § 12, was most appropriate statute of limitations in suit to vacate arbitration award); *In re Data Access Systems Securities Litigation*, 843 F.2d 1537, 1543–45 (3d Cir. 1988) (en banc) (borrowing federal statute of limitations from elsewhere in Securities Act of 1934 in connection with § 10b–5 suits; reversing earlier circuit precedent). The key has become appropriateness: although we look first to state provisions, we should not hesitate to switch our gaze to the shelves of the federal-law cupboard if some federal rule seems, on balance, "significantly more appropriate." *DelCostello*, 462 U.S. at 172, 103 S.Ct. at 2294.

*DelCostello* involved what we have termed a hybrid § 301/fair representation suit, *e.g., Arriaga–Zayas v. International Ladies' Garment Workers' Union*, 835 F.2d 11, 12 (1st Cir.1987) (describing elements of "classic hybrid § 301/unfair rep-

resentation amalgam"), *cert. denied,* —— U.S. ——, 108 S.Ct. 2016, 100 L.Ed.2d 604 (1988), that is, one in which an employee alleges both that his employer violated the collective bargaining agreement and that his union breached its duty of representing him fairly in the ensuing enforcement proceedings. Rather than looking to state law, the *DelCostello* Court held that the six-month statute of limitations built into section 10(b) of the NLRA, 29 U.S.C. § 160(b), should control hybrid claims. The Court found the federal rule more apt because such a claim was "not a straightforward breach-of-contract suit under § 301, as was *Hoosier,*" but instead amounted to "a direct challenge to 'the private settlement of disputes under [the collective-bargaining agreement].'" *Id.* 462 U.S. at 165, 103 S.Ct. at 2291 (brackets in original) (quoting *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 66, 101 S.Ct. 1559, 1566, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring) and *Hoosier Cardinal,* 383 U.S. at 702, 86 S.Ct. at 1111). The suggested state-law analogs "suffer[ed] from flaws ... of practical application in view of the policies of federal labor law and the practicalities of hybrid § 301/fair representation litigation." *Id.* The *DelCostello* Court contrasted the deleterious effect incident to application of a lengthy state statute of limitations (which "would preclude the relatively rapid final resolution of labor disputes favored by federal law," *id.,* 462 U.S. at 168, 103 S.Ct. at 2292) with the more desirable six-month federal statute regularly applied under 29 U.S.C. § 160(b) to complaints based upon unfair labor practices (a provision which was "designed to accommodate a balance of interests very similar to that at stake [in the hybrid situation]," *id.* at 169, 103 S.Ct. at 2293).

To be sure, the Court's discussion in *Del-Costello* focused upon hybrid actions. Yet realistically, the sweep of the Court's language left little room to doubt that similar analyses should be undertaken for other varieties of cases arising in the section 301 milieu:

> [E]ven if this action were considered as arising solely under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, the objections to use of state law and the availability of a well-suited limitations period in § 10(b) would call for application of the latter rule.

*DelCostello,* 462 U.S. at 159 n. 12, 103 S.Ct. at 2287 n. 12; *cf. Hoosier Cardinal,* 383 U.S. at 705 n. 7, 86 S.Ct. at 2287 n. 7 (court declines to speculate as to rules on timeliness which may govern in "§ 301 suits different from the present one").

### III

We must thus decide, given the nature of the action and the policies undergirding the federal labor laws, what is the "most suitable statute or other rule of timeliness" for a suit to compel arbitration pursuant to a zoetic collective bargaining agreement. *DelCostello,* 462 U.S. at 158, 103 S.Ct. at 2287. The parties have presented the case with consummate skill, each having staked out its position adroitly. Appellant views arbitration as purely a matter of contract which should be governed by state law, in this instance by the Commonwealth's six-year statute of limitations for breach of contract, Mass.Gen.L. ch. 260, § 2. Western sees things through a different prism: the practicalities of labor-management relations and the policies underlying dispute resolution in the industrial justice system, appellee urges, call for resort to a federal rule, the six-month period provided under section 10(b) of the NLRA. Admittedly, each of these competing visions has some allure.

The matter is one of first impression in this circuit. Nevertheless, we are not bereft of pertinent judicial guidance. Five circuits have been called upon to choose between section 10(b), on the one hand, and a state limitation period, on the second hand, in connection with suits to compel arbitration. Without exception, they have pronounced the federal statute more appropriate. *See Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington,* 820 F.2d 31 (2d Cir.1987); *McCreedy v. Local No. 971, UAW,* 809 F.2d 1232 (6th Cir.1987); *International Association of Machinists and Aerospace Workers v. Allied Products Corp.,* 786 F.2d

1561 (11th Cir.1986); *Teamsters Union Local 315 v. Great Western Chemical Co.,* 781 F.2d 764 (9th Cir.1986); *Federation of Westinghouse Independent Salaried Unions v. Westinghouse Electric Corp.,* 736 F.2d 896 (3d Cir.1984). Although we are not constrained to follow the lead of another circuit or group of circuits, comity and common sense suggest that we should not discard their insights lightly. In this instance, we find their reasoning persuasive.

## A.

We start with a premise which we consider virtually unarguable: arbitration clauses in collective bargaining agreements implicate important federal interests not present in ordinary *ex contractu* litigation. While the right to arbitrate is conferred by the parties' agreement, arbitration itself is a respected mechanism for the resolution of disputes over other, substantive contractual rights. We agree with the Sixth Circuit that arbitration is a core policy of the federal labor law because it brings about a "final adjustment of differences by a means selected by the parties." *McCreedy,* 809 F.2d at 1237. Arbitration clauses are thus *sui generis* and cannot, as a matter of federal law, be viewed as equivalent to more ordinary contractual provisions for limitation purposes. *See generally Wilson v. Garcia,* 471 U.S. 261, 268, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985) (characterization of federal action when choosing statute of limitations is question of federal law). Refusal to arbitrate amounts to "a direct challenge to 'the private settlement of disputes under [the collective-bargaining agreement],'" *DelCostello,* 462 U.S. at 165, 103 S.Ct. at 2291.

For these reasons, a suit to compel arbitration is not much analogous to a garden-variety suit for breach of contract, *e.g.,* the claim for vacation pay in *Hoosier Cardinal* or the wrongful discharge plaint in *Cabarga Cruz.* Rather, this type of suit seeks to vindicate the vital interest of federal labor law in maintaining "the system of industrial self-government.... with its heavy emphasis on grievance, arbitration, and the 'law of the shop,'" *United Parcel Service,*

*Inc. v. Mitchell,* 451 U.S. at 63–64, 101 S.Ct. at 1564. (*quoted in DelCostello,* 462 U.S. at 168–69, 103 S.Ct. at 2293). From this coign of vantage, actions to compel arbitration appear closely analogous to suits over unfair labor practices which are directly subject to the proscription of section 10(b). In each instance—when arbitration is refused or when unfair tactics are employed—the complex, delicately-balanced system of industrial relations comes under siege; the stability of the process is placed at risk; and the need for some efficacious restorative is correspondingly great.

The same cannot credibly be said of ordinary disputes over the meaning of contract terms. In that context, individualized rights are at stake, but systemic concerns are less directly jeopardized. Accordingly, the analogy to contract litigation outside the labor-management arena fits much better, and employment of a generic state-law statute of limitations has considerably more to commend it. *Cf. Malley–Duff,* 107 S.Ct. at 2765 (civil RICO is *sui generis* and has no comparable state-law analog; Clayton Act limitation period "significantly more appropriate" than state alternatives); *Data Access Systems,* 843 F.2d at 1547–49 (provisions of Securities Act of 1934 more closely analogous to § 10b–5 action than state tort or blue-sky laws). Inasmuch as efficient procedures for arbitration are "central to the smooth operation of the [labor/management] process," *McCreedy,* 809 F.2d at 1238, efficient procedures to ensure fulfillment of agreements to arbitrate are likewise of the essence.

## B.

As a logical corollary to this premise, we believe that efficacy cannot exist in a temporal vacuum; when the system tilts, remediation must follow without lengthy delays. The objectives of federal labor policy require not only that arbitration be invoked when and as contracted for—but that it be invoked swiftly as well. The application of a long "borrowed" statute of limitations to a § 301 case would, more often than not, pose an unacceptable threat of "preclud[ing] the relatively rapid final

resolution of labor disputes favored by federal law." *DelCostello*, 462 U.S. at 168, 103 S.Ct. at 2292. *See also Arriaga–Zayas v. International Ladies' Garment Workers' Union*, 835 F.2d at 13–14 n. 3; *Graves v. Smith's Transfer Corp.*, 736 F.2d 819, 821 (1st Cir.1984). Consistent with what the Court has taught, we think it markedly undesirable for the arbitral process to be "suspended in limbo for long periods...." *United Parcel Service v. Mitchell*, 451 U.S. at 64, 101 S.Ct. at 1565. As the Ninth Circuit has explained:

> [I]t is important that [arbitration] be promptly invoked and promptly administered—important to the named parties and especially important to the aggrieved employee union member, and to those in management who have had direct relationships with the grievant. They all need to know where they stand. A long period of controversy and conflict can be a serious burden, both for the grievant and for the management, and can poison the relationship between the contracting parties that the contract was designed to establish and preserve.

*Teamsters Union Local 315,* 781 F.2d at 766.

We agree that six years—the interval specified in the state statute which appellant yearns to embrace—"is simply too long to allow industrial disputes to fester." *Associated Brick Mason Contractors*, 820 F.2d at 37. *Accord Westinghouse*, 736 F.2d at 901 & n. 3 (applying a six-year state limitation period would "stretch[ ] out industrial disputes far longer than most recent cases have deemed desirable"); *cf. Arriaga–Zayas*, 835 F.2d at 1314 n. 3 (discussing "salient temporal dimension" involved in search for most appropriate analog). In contrast, the six-month limitation period embodied in section 10(b), when employed in conjunction with petitions to compel arbitration, fits neatly within the encasement. Framing such a tightly-circumscribed window of opportunity encourages the cardinal policies underlying the LMRA and promotes the rapid settlement of industrial disputes. Parties seeking arbitration must, within a reasonably short time, fish or cut bait. Thus, resort to federal law in this setting is tantamount to placing a square peg in a square hole. Perhaps the law need not always align itself with common sense, but when that happy coincidence occurs, lawyers and judges should not reflexively recoil from it.

## C.

At the expense of possibly painting the lily, we explain briefly why, in our view, a six-month limitation upon the time for bringing suits to compel arbitration comports comfortably with the overall scheme of federal labor law. The grievances underlying claims for arbitration typically involve unfair labor practices. *See Associated Brick Mason Contractors*, 820 F.2d at 37; *Westinghouse*, 736 F.2d at 902 (listing illustrative cases). Because Congress, in enacting the NLRA, chose to limit the time for suit over unfair labor practices to six months, it would seem to contradict federal policy, and circumvent the bar of section 10(b), to allow a grievant six years in which to compel arbitration of a grievance, while affording the very same party a mere six months to sue directly on the very same matter.

*DelCostello*, we suggest, leads in a parallel direction. There, the Supreme Court invoked section 10(b), establishing a six-month time limit for individual employees bringing hybrid § 301/fair representation suits. In such a suit, the employee necessarily alleges that the union has been derelict in its duty to press his grievance. *See Arriaga–Zayas*, 835 F.2d at 12 (one element of classic hybrid is charge that "union ... ignored the duty of fair representation"). It stands reason on its head to urge a six-year time limit for unions—entities which, by and large, are knowledgeable, resourceful, and diligent—to seek resolution of members' grievances, while at the same time affording an employee who has been cut adrift by his union only six months to commence a hybrid action.

Appellant, of course, sees the anomaly the other way around: it is irrational, the

union complains, to grant a labor plaintiff six years within which to prosecute a straightforward breach-of-contract suit, but only six months within which to compel arbitration. But we think the lachrymosity unfounded. That there are distinctions separating arbitration from litigation is neither surprising nor undesirable. Arbitration, not litigation, is the preferred method of dispute resolution in the labor-management field—and by a substantial margin. *See United Steelworkers of America v. Warrior & Gulf Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960) (discussing advantages of arbitration); F. Elkouri & E. Elkouri, *How Arbitration Works* 7–9 (4th ed. 1985) (similar). Applying a shorter statute of limitations when parties genuinely believe their disputes to be arbitrable will, in our opinion, encourage them to arbitrate their differences quickly. That, it seems to us, confers a considerable systemic benefit and ties in neatly with what Congress intended.

It is equally no answer to say that breach of a collective bargaining agreement, like a wrongful refusal to arbitrate, is an unfair labor practice, and thus should command the same statute of limitations. In the first place, that asseveration flies in the face of *DelCostello*. In the second place, it overlooks the undeniable fact that section 301 is not monolithic. Though couched in the idiom of contract, the law's scope extends to a wide range of substantive claims arising in a multiplicity of procedural postures. *See, e.g., Schneider Moving and Storage Co. v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984) (suit to enforce terms of employee benefit trust); *Plumbers & Pipefitters v. Local 334*, 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981) (inter-union suit alleging violation of union constitution); *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) (suit by management to enjoin strike and compel arbitration); *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964) (challenge to decision of joint labor-management conference committee); *Re-*

*tail Clerks v. Lion Dry Goods*, 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1962) (suit to enforce settlement agreement). In brief, federal substantive law is implicated in section 301 litigation, and there are myriad ways in which the law may be invoked. Indeed, as the Supreme Court has mused, "[t]he range of judicial inventiveness will be determined by the nature of the problem." *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456–57, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957). Certain section 301 actions—such as suits to compel arbitration—share particular distinguishing characteristics that differentiate them from routine state-law breach-of-contract litigation. In the case at bar, this bundle of idiosyncratic traits weighs heavily in our selection of an appropriate limitation period.

We likewise reject appellant's contention that *Derwin v. General Dynamics Corp.*, 719 F.2d 484 (1st Cir.1983), controls this case. *Derwin* involved an action to confirm an arbitration award. We held that state law supplied the appropriate limitation period. But the decision in *Derwin*, as in *DelCostello* and in the instant case, turned upon the relative appropriateness of various possible proscriptive limits in light of federal labor policy. *See Derwin*, 719 F.2d at 487–90. There, the scales were weighted differently. An action to confirm arbitration takes place *after* the processes of dispute resolution have run their course. As the Second Circuit has observed:

> A dispute between a union and an employer remains completely unsettled between the time a grievance arises and the time a petition to compel arbitration is filed. By contrast, there is little or no uncertainty concerning the status of a grievance after an arbitrator issues an award and before an action to enforce that award is filed.

*Associated Brick Mason Contractors*, 820 F.2d at 37. For that reason, applying a relatively lengthy statute of limitations to confirmation actions does not implicate the finality of arbitral awards. This, of course,

was among our core concerns in *Derwin,* for that very finality would be disserved by establishing a crabbed limitation period after which an award could not be confirmed. The result we reach today is, therefore, cut from the same cloth as the result reached in *Derwin:* in both situations, the chosen statute of limitations "promotes industrial harmony and maintains the integrity of the arbitral process." *Associated Brick Mason Contractors,* 820 F.2d at 37.[2]

Before leaving this topic, we note one further way in which resort to section 10(b) interlocks with the overall thrust of the legislative scheme. Because arbitration is one of "those consensual processes that federal labor law is chiefly designed to promote," *DelCostello,* 462 U.S. at 163, 103 S.Ct. at 2289, the desirability of a nationally uniform yardstick, we believe, takes on special importance when selecting a statute of limitations. The need for uniformity is in our view much greater here—in connection with a matter of systemic concern—than with respect to, say, a claim for vacation pay or an individual's complaint that he was wrongfully discharged.

### D.

CWA's final jeremiad raises what we think to be a straw man: the bugbear that choosing a federal rule of decision will discourage the informal resolution of grievances between labor and management. This thesis is constructed on a wobbly infrastructure: the notion that unions will be forced to file suits to compel arbitration while informal negotiations are still in progress, thereby polarizing the parties unnecessarily. We disagree. Passing the obvious—that the parties can always stipulate to extend the limitation period if there is a mutual desire to continue shirtsleeve discussion—a union's cause of action to compel arbitration arises only "when the

employer takes an unequivocal position that it will not arbitrate." *McCreedy,* 809 F.2d at 1237; *see also Associated Brick Mason Contractors,* 820 F.2d at 38; *Westinghouse,* 736 F.2d at 902. The six-month statute of limitations begins to run at that moment. There remains ample time for informal negotiation before the employer has reached that point. Indeed, give-and-take between labor and management will most likely occur prior to the time union officials seek arbitration. After management has unequivocally refused to arbitrate, the likelihood of further concessions seems highly problematic. In the typical situation, a suit to compel arbitration will be necessary only when more casual processes of dispute resolution have irretrievably collapsed.

The instant case is cut to this sample. Union members made substantial efforts to reach an informal resolution of the job grade dispute. Individual workers asked for—and received—a review of Western's decision. Subsequently, the union began informal inquiries. On two occasions, the company, responsive to CWA's initiatives, reevaluated the matter and confirmed the rating. All told, nearly two years elapsed between Western's original classification change and CWA's commencement of preparations for an arbitration. That long period was punctuated by informal negotiations at several points. Arbitration did not begin to loom as an impending issue until less structured talks had proven fruitless and it had become clear to all that Western's corporate mind was made up.

What we have here is a failure to listen. Western refused three times to change the job grade. It went on to tell the union—four times at least—that it would not arbitrate the matter. At some point, the law must declare a standoff. Once the employer unequivocally spurns arbitration, the goal of grievance resolution is in our view

**2.** Insofar as CWA's argument prescinds from *Derwin,* it has been made and rejected elsewhere. *See, e.g., Associated Brick Mason Contractors,* 820 F.2d at 37; *Westinghouse,* 736 F.2d at 901. Admittedly, because *Derwin* is our

precedent and is binding on panels within this circuit, it weighs more heavily in our calculations. Yet we think our decision today not contrary to *Derwin,* and we find the distinctions described by our sister circuits to be valid ones.

best served by forcing the union to sue for arbitration within a reasonable period of time thereafter. And six months seems to us a reasonable time, serving the parties and the system far better than a proscription period which would keep the potential threat of arbitration—and the consequent need for possible retrospective remediation, should the arbitration take place and be resolved in the grievant's favor—dangling, unresolved, for upward of five additional years.

## IV

We reject CWA's imprecation that we turn to state law for temporal guidance. For essentially the same reasons which justified "borrowing" section 10(b) of the NLRA vis-a-vis hybrid suits in *DelCostello*, we rule that federal law provides the best, closest, and most appropriate analogy for use in determining the limitation period applicable to a section 301 suit to compel arbitration.

We need go no further. The record makes manifest that CWA first broached the subject of arbitration in a letter to Western under date of November 17, 1981. The company's reply was immediate, blunt, and to the point: it considered the matter non-arbitrable. This response comprised an unequivocal refusal to arbitrate. As such, it was sufficient to start the limitations clock. Thereafter, more than ten months elapsed before appellant filed suit. That was simply too long.

AFFIRMED.