**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Plaintiff,**

v.

**CARIBE GENERAL ELECTRIC PRODUCTS, INC., Defendant.**

Civil No. 93–1793 (JP).

United States District Court, D. Puerto Rico.

Jan. 10, 1996.

Luis F. Padilla Padilla, Hato Rey, P.R., for Plaintiff.

Juan J. Martínez Rodríguez, Rivera, Tulla & Ferrer, Hato Rey, P.R., for Defendant.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it defendant's Motion for Summary Judgment, plaintiff's Opposition and Cross Motion for Summary Judgment, and their respective supplemental motions (docket Nos. 18, 22, 24, and 31). Plaintiff, the union organization representing the employees of Caribe General Electric, the Palmer, Puerto Rico plant, have brought this action pursuant to the Labor Management Relations Act, 29 U.S.C. § 185 to enforce provisions of the parties' Collective Bargaining Agreement ("CBA"). Plaintiff has brought this case to recover damages caused by defendant's alleged violation of the CBA, or alternatively, to compel defendant to arbitrate these grievances pursuant to Section 301. Plaintiff's grievances concern the demotion of one employee, failure to award a position on a permanent basis, and reassignment of three employees caused by a reorganization of three departments. Defendant denies that these grievances are arbitrable under the CBA, and asserts that the Complaint was filed beyond the statute of limitations, therefore it should be dismissed.

For the reasons stated below, defendant's motion for summary judgment is hereby **DENIED** and plaintiff's cross motion for summary judgment is hereby **GRANTED.**

## I.  UNCONTESTED FACTS

The parties in the case at bar agree that there is no dispute concerning any material fact. The following is a concise statement of uncontested facts as stated by in the parties statement of material uncontested facts annexed to their motions for summary judgment.

1.  Plaintiff is a labor organization and the duly certified, exclusive bargaining representative for the employees in Caribe General Electric which is an industry affecting commerce, located in Palmer Ward, Rio Grande, Puerto Rico.

2.  Defendant is a corporation registered under the laws of the State of Delaware, with its principal place of business in Puerto Rico, and is engaged in the manufacture and sale of electrical products.

3. On or about October 30, 1989, plaintiff and defendant executed a collective bargaining agreement ("CBA") covering specific groups of employees who worked at the Caribe GE plant in Palmer Ward, Rio Grande, Puerto Rico. This agreement expired on September 1, 1992, and the parties have negotiated and executed a three-year agreement to replace the aforementioned agreement.

4. There are five grievances which form the basis of the Complaint in the case at bar, grievances 4–92, 20–92, 23–92, 24–92, and 25–92.

5. Grievance No 4–92 involves the position of a dispatcher, Antonio Vázquez. The position of the dispatcher involved compilation of information at the point of production at the machine counters. Defendant eliminated the position of dispatcher and reassigned at least some of the duties previously performed by the dispatcher to the shipping clerk. As a result, Mr. Vázquez was demoted on January 20, 1992, to a position of materials handler, which had a classification lower than that of a dispatcher.

6. Grievance 20–92 involves an individual, Narciso Torréns, who performed the tasks of two set-up assembly men for more than 30 days. Two separate set-up assembly men took successive vacations. Mr. Torréns covered those temporary vacancies. The CBA provides that a position must be offered publicly and announced on a bulletin board after an individual has been working in that position for a thirty-day period.

7. Grievances 23–92, 24–92, and 25–92 involve the positions of Ibrahim Rosario, Herminio López and Esteban Calderón, respectively. Prior to March 1, 1992, these three individuals occupied the positions of group leaders of the TQD/TQDL (two separate breakers) department, Welding department and the 218 (another breaker) department, respectively. The company reorganized the departments by integrating the welding processes into the TQD/TQDL and the 218 departments, and eliminating the Welding department. Mr. Rosario, the least senior of the three individuals, was demoted from his position as Group Leader. Mr. López was reassigned to the position of Group Leader of the reorganized TQD/TQDL department, and Mr. Calderdón was assigned to the position as Group Leader of the reorganized 218 department.

8. Article XXXIV of the CBA establishes a procedure for the arbitration of grievances.

9. Specifically, Article XXXIV–2(a) and 2(b) of the CBA provide that the party requesting arbitration shall send the other party a written notification stating the nature of the dispute and the remedy requested. The receiving party will respond to the request in writing within thirty days of the receipt of the request. If the receiving party contends that the grievance is not arbitrable, it shall states its reasons for its opinion in reasonable detail.

10. Article XXXIV–2(d) of the CBA provides that if there is a disagreement between the parties as to whether or not a grievance is arbitrable, "either party may request a conference to discuss the arbitrability of the dispute, and to seek to resolve the differences between the parties."

11. On or about July 27, 1992, Mr. Juan Maldonado, Grand Lodge Representative of IAM sent a letter to Nora Henríquez, Director of Human Resources of Caribe General Electric, requesting arbitration of grievances Nos. 23–92, 24–92, and 25–92. Exhibit B to plaintiff's opposition to defendant's motion for summary judgment and cross motion for summary judgment, docket No. 22.

12. On September 18, 1992, Nora Henríquez sent Juan Maldonado a letter which states "The company still does not think this [sic] grievance is arbitrable, however according to article XXXIV section 2(d) the company suggests that we sit down and discuss arbitrability." Exhibit D to plaintiff's motion, docket No. 22.

13. On December 8, 1992, defendant agreed to meet with plaintiff to discuss grievances 4–92, 23–92, 24–92, and 25–92. A meeting was scheduled to discuss these grievances for January 14 and 15, 1993.

14. The parties did not resolve their differences of opinion regarding the arbitrability of these grievances at that meeting.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that five grievances in dispute in the case at bar are subject to arbitration as a matter of right, pursuant to the provisions of the CBA. Moreover, they argue that they informed defendant of their wish to arbitrate, however, defendant did not respond within the time period as stated in the CBA. Therefore, plaintiff argues, defendant waived its right to contest the arbitrability of these grievances.

Plaintiff contends that the request for arbitration is not time barred. It asserts that it filed the request within the six month period following the January 14 and 15, 1993 meeting, when the company firmly stated it's refusal to arbitrate.

## III. DEFENDANT'S ALLEGATIONS

Defendant contends that these particular grievances are not arbitrable as a matter of right because they involve the application of management's rights to restructure certain positions in order to make the company more efficient. Therefore, defendant argues that the CBA subjects these grievances to voluntary arbitration. Since defendant declined to arbitrate these grievances, it argues, it cannot be compelled to do so.

Moreover, defendant asserts that it unequivocally notified plaintiff of its position that these grievances were not arbitrable on September 18, 1992, and that plaintiff filed the complaint on May 28, 1993, more than six months later. Defendant asserts that plaintiff's complaint is therefore barred by the six month statute of limitations.

## IV. THE SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment in a case where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993); *Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir.1989); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988).

Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, there is not the slightest doubt as to whether a genuine issue of material fact exists. *Kennedy v. Josephthal & Co.,* 814 F.2d 798, 804 (1st Cir.1987); *Peckham v. Ronrico Corp.,* 171 F.2d 653 (1st Cir.1948). A "genuine" issue is one that is dispositive, and which consequently must be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir. 1989); *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A material fact, which is defined by the substantive law, is one which affects the outcome of the suit and which must be resolved before attending to related legal issues. *Mack,* 871 F.2d at 181.

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Thereafter, the burden shifts to the non-movant to provide the Court, through the filing of supporting affidavits or otherwise, with "some indication that he can produce the quantum of evidence [necessary] to enable him to reach the jury with his claim." *Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir.1975); *see also Brennan,* 888 F.2d at 191. The non-movant cannot rest upon mere allegations or denial of the pleadings. Fed. R.Civ.P. 56(e).

## V. STATUTE OF LIMITATIONS

The parties agree that the six month statute of limitations borrowed from section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) governs the present action. *See Communications Workers of America v. Western Electric Co.,* 860 F.2d 1137 (1st Cir. 1988). Moreover, the parties agree that the statute of limitations begins to run at the moment that the "employer takes an unequivocal position that it will not arbitrate," *Id.* at 1144 (citing *McCreedy v. Local Union*

*No. 971, UAW*, 809 F.2d 1232, 1237 (6th Cir.1987)).

The issue here is at what point in time did defendant unequivocally states its refusal to arbitrate the grievances in dispute, so that the statute of limitations began to run. On September 18, 1992, Nora Henríquez, Director of the Department of Human Resources of Caribe GE wrote a letter to Juan Maldonado, Grand Lodge Representative of IAM. Defendant argues that this letter constitutes an unequivocal statement of defendant's refusal to arbitrate. Plaintiff, on the other hand, argues that defendant did not take the unequivocal position that it would refuse to arbitrate until the meeting with union representatives on January 14–15, 1993.

Defendant's September 18, 1992 letter to plaintiff begins with the statement, "[y]our letter answering to the company's position on the above grievances has some details that need clarification." After two paragraphs regarding specific aspects of the company's position towards the grievances at issue, the relevant portion of the letter concludes:

> The company still does not think this [sic] grievance is arbitrable, however according to article XXXIV section 2(d) the company suggests that we sit down and discuss arbitrability.

After the receipt of this letter, the parties agreed to meet on January 14–15, 1993, to further discuss the arbitrability of these grievances.

The September 18, 1992 letter does not unequivocally demonstrate that defendant considered the grievances non-arbitrable. Neither the language of the letter nor the conduct of defendant suggests that defendant had decisively communicated with plaintiff its position that the grievances were not subject to the mandatory arbitration clause of the CBA. First, the letter begins by stating that the purpose of that communication was to clarify, suggesting that perhaps the disagreement between the parties involved a misunderstanding, and not a difference of opinions about which no compromise could be reached. Second, the letter concludes with the suggestion that the parties meet to discuss their differing views. This implies that

the employer has not reached a final, absolute decision and that further discussion between the two parties could lead to a resolution of their differences. The parties did actually meet on January 14 and 15, 1993, pursuant to the provisions in the CBA to discuss the arbitrability of the grievances at issue, but were unable to agree. Therefore, it is at this point in time that plaintiff's cause of action accrued.

█ Moreover, filing the Complaint earlier, within six months of the Nora Henríquez' letter, would have hindered the possibility of negotiations continuing between the parties. "In the typical situation, a suit to compel arbitration will be necessary only when processes of dispute resolution have irretrievably collapsed." *Communications Workers of America v. Western Electric Co.*, 860 F.2d at 1144. All possible forms of dispute resolution disintegrated after the parties met to discuss the grievances and arrived at the conclusion that there was an unresolvable disagreement. Consequently, the statute of limitations began to run on January 15, 1993. Plaintiff filed the Complaint within six months of the date upon which the parties met. Therefore, the statute of limitations does not bar the Complaint.

## VI. WAIVER OF CHALLENGE OF ARBITRABILITY

█ Plaintiff asserts that defendant failed to respond in writing to plaintiff's request to arbitrate the grievances within thirty days, as required by the CBA. Therefore, plaintiff contends, defendant is barred from presently asserting the non-arbitrability of the grievances, since it has waived that argument. Defendant, in essence, concedes that the September 18, 1992 letter written by Nora Henríquez, Director of the Department of Human Resources of Caribe GE to Juan Maldonado, Grand Lodge Representative of IAM, was more than thirty days after plaintiff's July 27, 1992 request to arbitrate. Defendant contends, however, that it has raised a substantive, jurisdictional challenge to the arbitrable nature of the grievances. Furthermore, defendant contends that a technical failure to comply with a procedural

provision cannot waive a substantive, jurisdictional challenge.

█ The Court finds that defendant has raised substantive challenges regarding whether or not the CBA provided for either mandatory or voluntary arbitration of the grievances in dispute. A procedural challenge to arbitration may be waived if it is untimely raised. *Shopmen's Local 539 v. Mosher Steel Co.*, 796 F.2d 1361 (11th Cir. 1986). A substantive challenge to arbitrability, however, may not be waived and may be raised at any point in time.

## VII. ARBITRABILITY OF GRIEVANCE

█ The parties dispute whether the grievances at issue are arbitrable pursuant to the provisions of the CBA. Plaintiff asserts that the grievances are arbitrable as a matter of right pursuant to Article XXXIV, Section 6(a)(ii), which provides for mandatory arbitration of "[t]he claimed violation of a specific provision or provisions of this Agreement (with the limitations and exceptions set out in this Article XXXIV)." Plaintiff asserts that defendant violated specific provisions of the CBA when it took the action demoting one employee, failing to post a vacancy of another, and reorganizing the positions of three other employees.

Specifically, plaintiff first contends that defendant violated Article XXIV 2(g) and (h) of the CBA, which require the company to publicly offer and announce on a bulletin board a position which is filled by an individual for more than 30 days, Grievance 20–92. Next, plaintiff contends that defendant's actions in reorganizing the three departments, thereby changing the duties performed by two group leaders and demoting another group leader, as well as the demotion of a dispatcher due to the change in duties violated Article VIII "Wage Rates" of the CBA.

Defendant contends that all the complained of activity falls within the scope of the company's exercise of its management rights, Article IV of the CBA. The reorganization of the departments and the duties of the dispatcher were brought about to maintain efficiency of operations, defendant asserts. Therefore, defendant argues, these grievances are not arbitrable as a matter of right, rather they are subject to voluntary arbitration.

█ Whether or not these grievances are arbitrable involves the interpretation of various provisions of the CBA, including the arbitration clause, and a decision regarding how they apply in this particular case. *See Quesnel v. Prudential Ins. Co.*, 66 F.3d 8, 11 (1st Cir.1995). There is a rebuttable presumption that courts should encourage arbitration of differences between an employer company and the employee's union. "Arbitration, not litigation, is the preferred method of dispute resolution in the labor-management field." *Communications Workers of America v. Western Electric Co.*, 860 F.2d at 1143. If there is a question as to whether the collective bargaining agreement provides coverage for the arbitration of a specific subject matter, "[d]oubts should be resolved in favor of coverage." *AT & T Technologies v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & G. Nav. Co.* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960)).

The arbitration clause of the parties' CBA provides that a request for arbitration which concerns disciplinary action, or a claimed violation of a specific provision or provisions of the CBA are arbitrable as a matter of right. In addition, the arbitration clause provides that a separate class of grievances is subject to voluntary arbitration.

This is not the first time these parties have appeared before this Court in order to determine the arbitrability of grievances which concern defendant's management rights. In 1990, the parties disputed the arbitrability of two grievances involving the layoffs of two employees because the company decided there was a lack of work to warrant those two positions. *International Ass'n of Machinists and Aerospace Workers Local, 2725 v. General Elec. Co.*, 1990 WL 29806 (D.P.R.1990), Civil Case No. 89–1115(JP). The uncontested facts of that case were that two employees, a tool and die maker and a cleaning person, were laid off from their respective positions, in compliance

with the seniority and layoff procedures established by Article XXIII of the CBA. The Union sought to arbitrate grievances relating to these layoffs because it asserted that there was not an actual lack of work justifying the layoffs. The company contended that the grievances were not covered by the mandatory arbitration clause of the CBA because the decision relating to the reduction in the workforce was an issue strictly reserved by management under the provision of the CBA relating to management rights.

In that case, this Court decided that the grievances were not arbitrable. More specifically, this Court held as follows: "[a]fter examining the collective bargaining agreement's pertinent provisions and the arguments raised by the parties, the Court finds that the grievances were specifically excluded from arbitration. The presumption of arbitrability is not present in this case because there is an express provision (Article XXXIV Section 4(b)(4)) immunizing the grievances from compulsory arbitration." *Id.* at 11.

An essential element of the rationale leading to this determination was the uncontested fact that the company had not violated any specific provision of the CBA when effectuating the reduction in workforce. Therefore, the grievances at question were subject only to the voluntary arbitration clause, and not the mandatory arbitration clause. Moreover, this Court recognized that "[i]f the Employer had violated the layoff procedure established in the CBA, then a grievance filed concerning that managerial decision would have been arbitrable. *See IAM Local Lodge 2318 v. Cablec Corp.*, 664 F.Supp. 271 (W.D.Ky.1987)." 89–1115 at 15, n. 4.

In the case at bar, plaintiff has asserted that defendant's actions did violate specific provisions of the layoff procedure, posting of vacancy procedure, and consolidation of duties procedure. There is a legitimate disagreement of contractual interpretation concerning these issues. Therefore, it is unclear whether the grievances in the case at bar are subject first to the mandatory arbitration clause.

A second factor which distinguishes the two cases involves the scope of the management rights clause. Article XXXIV Section 4(b)(4) reads as follows:

> In the consideration of whether a matter is subject to arbitration as a matter of right, a fundamental principle shall be that the Company retains all of its rights to manage the business, including (but not limited to the right to determine the methods and means by which its operations are to be carried on, to direct the work force and to conduct its operations in a safe and effective manner, subject only to the expressed limitations set forth in this Agreement and it is understood that the parties have not agreed to arbitrate demands which challenge action taken by the Company in the exercise of any such rights, *except where such challenge is based upon a violation of any such expressed limitations (other than those set out in Section 7 of this Article XXXIV).* (Emphasis added).

In the 1990 case, Civil No. 89–1115, this Court found that the scope of the management rights clause extends to the determination of the size and composition of the workforce in order to maintain efficiency. Consequently, this provision encompasses the right of the company to unilaterally determine whether there was a lack of work to warrant a layoff of a particular individual. The grievances in the case at bar, however, involve the reclassification of the duties of certain pre-established job classifications. It is not clear that these activities necessarily fall within the scope of the management rights clause.

Moreover, it is unclear how this provision relates to Article VIII "Wage Rates" of the CBA which reads as follows:

> "1. *Job Classifications and Job Rates*
>
> (a) The Company will notify the Union in advance of effecting a new classification or revising an existing job classification along with the new rate assigned. Such notification shall include the reasons dictating the change, but such notification and discussion shall not preclude the Company from implementing new or revised classifications. *Any questions concerning the establishment and/or revision of an individual Job Rate or*

*individual Job Classification not resolved by the aforementioned discussion shall be subject to the Grievance Procedure as set forth in Article XXXIII, Grievance Procedure."* (Emphasis added).

It is a well settled principle of labor law that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *United Steelworkers v. Warrior & G. Nav. Co.* 363 U.S. at 582–83, 80 S.Ct. at 1353. The final determination of this issue necessarily involves interpretation of various overlapping and potentially conflicting provisions of the CBA. Moreover, when viewing allegations concerning arbitrability,

> the court should view with suspicion an attempt to persuade it to become entangled in the construction of substantive provisions of the labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator. *Id.* at 585, 80 S.Ct. at 1354.

Because there is confusion over whether these grievances fall within the parameter of arbitrability, this case must go to the arbitrator for a final determination.

## VIII. CONCLUSION

Plaintiff's action to compel arbitration is not barred by the relevant statute of limitations. Defendant did not waive its right to bring a substantive challenge against plaintiff's request for arbitration by failing to respond to the request within a thirty day period. Moreover, the grievances raised by plaintiff involve the interpretation of various provisions of the CBA, including the provision precluding issues relating to management rights from arbitration and whether defendant did in fact violate other specific provisions. Therefore, the grievances are arbitrable as a matter of right. Consequently, defendant's motion for summary judgment is hereby **DENIED,** and plaintiff's cross motion for summary judgment is hereby **GRANTED.**

The parties specifically provide in the CBA, in Article XXXIV Section 4(c) that "the Court's decision (to grant request to arbitrate) shall specify in reasonable detail the issues as to which arbitration is directed." The parties further specify their intention that the arbitrator shall derive its authority to arbitrate the disputed grievances based upon the Court's mandate.

The arbitrator must resolve two separate questions. First, the arbitrator must examine the question of whether the grievances in dispute are in fact arbitrable either as a matter of right or as a matter of discretion. After considering the CBA in its entirety, the arbitrator may decide that the grievances are subject only to voluntary arbitration, and are not arbitrable as a matter of right, even if they do involve an alleged violation of other specific provisions under Article XXXIV, Section 6(a)(ii).

If, however, the arbitrator finds that the grievances are arbitrable as a matter of right, then the arbitrator must enter into the substance of the grievances to determine whether when taking this action, the company violated other pertinent provisions of the CBA.

IT IS SO ORDERED.