**AMERICAN FEDERATION OF STATE, COUNTY, & MUNICIPAL EMPLOYEES, COUNCIL 93 LOCAL 1370, AFL–CIO, Plaintiff,**

v.

**OLYMPUS SPECIALTY & REHABILITATION HOSPITAL and Commonwealth Community Holdings, LLC, Defendants.**

No. CIV.A. 02–30140–KPN.

United States District Court, D. Massachusetts.

Sept. 3, 2003.

**60**

Terence P. McCourt, Hanify & King, Professional Corporation, Boston, MA, for Olympus Specialty & Rehabilitation Hospital, Defendant.

Jay M. Presser, Skoler, Abbott & Presser, Springfield, MA, for Commonwealth Community Holdings, LLC, Defendant.

Angela M. Wessels, AFSCME Council 93, Associate General Counsel, Boston, MA, for American Federation of State, County & Municipal Employees, Council 93, Local 1370, AFL–CIO, Plaintiff.

## MEMORANDUM AND ORDER WITH REGARD TO CROSS MOTIONS FOR SUMMARY JUDGMENT (Document Nos. 19 and 23)

NEIMAN, United States Magistrate Judge.

In this action, the American Federation of State, County and Municipal Employees, Council 93, Local 1370, AFL–CIO ("Plaintiff" or "the union"), seeks to compel arbitration of the grievances of three terminated hospital employees pursuant to section 301 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 185 ("section 301"). Currently at issue are cross motions for summary judgment filed by the union and Commonwealth Community Holdings, LLC ("Commonwealth" or "Defendant"), the hospital's present owner and the sole remaining defendant.[1]

The parties have consented to this court's jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73(b). For the following reasons, the court will allow Defendant's motion for summary judgment and deny Plaintiff's cross motion.

### I. BACKGROUND

This dispute originated in the waning months of 2000 when Olympus, the hospital's then owner, fired three employees

---

1. As will be described, Commonwealth purchased the hospital's assets from Olympus Specialty and Rehabilitation Hospital d/b/a Olympus of Massachusetts, Inc. ("Olympus") in April of 2001. On September 3, 2002, Plaintiff initiated this lawsuit against both Olympus and Commonwealth. In February of 2003, after Olympus filed for bankruptcy, the court allowed Plaintiff to voluntarily dismiss Olympus from this action.

covered by a four-year collective bargaining agreement ("CBA") entered into between Olympus and the union in September of 2000. The union demurred—claiming that the terminations violated the CBA's "just cause" provision—and, in January of 2001, filed separate demands for arbitration. In March of 2001, the American Arbitration Association scheduled hearings for three separate dates in June and July.

In the interim, on March 14, 2001, Olympus and Commonwealth entered into a Purchase and Sales Agreement. In that contract, Commonwealth agreed to buy the hospital's assets, effective April 7, 2001, and Olympus agreed to relieve Commonwealth of any liability with respect to employing Olympus's existing workforce. Nonetheless, Commonwealth informed the union in a letter dated March 16, 2001, that it intended "to honor the labor agreement" then existing between the union and Olympus, i.e., the CBA entered into the previous September.

On March 31, 2001, Olympus notified all of the hospital's employees that they would be terminated as of April 7th. Soon thereafter, Commonwealth offered jobs to a majority of Olympus's workforce. It did not, however, extend offers to the three individuals whose terminations were the subject of the pending arbitration hearings.

On May 14, 2001, counsel for Olympus withdrew his appearance in the three arbitration cases and the hearings were continued. Since that time, Commonwealth has disclaimed any obligation to arbitrate the three grievances. Most notably, on September 26, 2001, Commonwealth sent the union a letter reaffirming that fact:

> The terms of the purchase indicated specifically to Olympus ... that Commonwealth ... was not accepting any prior responsibility for any prior arbitration cases dealing with unresolved disputes that arose prior to the date of sale. In addition, you were notified ... prior to the date of sale that we were not accepting responsibility for those pending cases with Olympus ..., nor would we be bound by any result of those pending arbitrations because they preceded the arrival of Commonwealth ....

(Document No. 25 (hereinafter "Marsh Affidavit"), Exhibit 4.)

As indicated (see n. 1, supra), the union, on September 3, 2002, filed the instant complaint to compel arbitration against both Olympus and Commonwealth, but thereafter voluntarily dismissed its claims against Olympus. In due course, the union and Commonwealth filed cross motions for summary judgment. The court heard oral argument on July 25, 2003.

## II. STANDARD OF REVIEW

When ruling on a motion for summary judgment, the court must construe the facts in a light most favorable to the nonmoving party. *Benoit v. Technical Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir.2003). Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). For this purpose, an issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the nonmoving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't. Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994). The nonmoving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

The mere fact that both parties move for summary judgment does not change the foregoing analysis. *United Paperworkers Intern. Union Local 14, AFL–CIO–CLC v. Intern. Paper Co.*, 64 F.3d 28, 32 n. 2 (1st Cir.1995). Barring special circumstances, a court must consider each motion separately, drawing inferences against each movant in turn. *E.E.O.C. v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 608 n. 8 (1st Cir.1995).

## III. DISCUSSION

Both parties agree that the cross motions for summary judgment raise two fundamental questions: (1) whether, by committing to "honor" the CBA, Commonwealth agreed to arbitrate the three grievances then pending; and (2) whether the union failed to file the present action within the applicable statute of limitations. In the end, the court concludes that, even if the answer to the first question is yes, the union's late filing of its suit, nearly a year after Commonwealth took an unequivocal position that it would not arbitrate the grievances, requires dismissal.

### A.

■ The union argues that it is entitled to summary judgment because, once Commonwealth committed to "honor" the CBA, it was required to arbitrate the three grievances. In essence, the union asks the court to interpret Commonwealth's commitment broadly such that the arbitrations pending between the union and Olympus survive as Commonwealth's cases. "[T]he unquestioned continuation of [the] entire [labor] contract," the union contends, "is laden with an implication ... that acknowledgment of the contract imports recognition of any then-pending grievances." (Document No. 20 (hereinafter "Plaintiff's Summary Judgment Brief") at 3.)

For its part, Commonwealth argues not only that the union's motion should be denied, but that it is entitled to summary judgment because it never agreed to arbitrate the grievances. When it agreed to "honor" the CBA, Commonwealth maintains, it did so prospectively and only with respect to those employees it hired, not to employees previously terminated by Olympus. In fact, Commonwealth notes, it told the union at a pre-sale meeting that it would not accept responsibility for any of Olympus's liabilities.

The court believes that Commonwealth has the better argument with regard to the union's motion for summary judgment. It must be remembered that the employees whose grievances were at issue were discharged by Olympus well before the April 7, 2001 effective date of Commonwealth's purchase of the hospital's assets. Moreover, the three employees were not part of Olympus's later mass termination, nor were they ever hired by Commonwealth. Thus, despite the sale, the three grievances, at best, continued to be arbitrable between the union and Olympus, not Commonwealth. In fact, that is precisely what the union attempted to do when it initially named Olympus as one of the defendants in the instant action.

Still, there remain enough genuine issues of material fact regarding the import of Commonwealth's agreement to honor the CBA so as to also deny Commonwealth's motion for summary judgment on this basis. For example, a jury might reasonably conclude, based on the present record, that Commonwealth's agreement to "honor" the CBA meant that it would "honor" as well Olympus's initial intention to arbitrate the three pre-sale terminations. *See Webster's Third New International Dictionary* 1087 (unabridged ed.1967) (defining "honor," inter alia, as "to live up to or fulfill: carry out"). It is

also worth noting that the union was not a party to the Purchase and Sales Agreement between Olympus and Commonwealth and, hence, did not commit itself to Commonwealth's limited liability established therein.

At bottom, therefore, the court believes that neither party is entitled to summary judgment on the first question. Accordingly, the court proceeds to the second question, namely, whether Commonwealth should be granted summary judgment because the union failed to file suit within the applicable limitations period.

### B.

■ Commonwealth argues that the six month statute of limitations found in section 10(b) of the NLRA, 29 U.S.C. § 160(b) (hereinafter "section 10(b)"), applies and that the union failed to file a timely complaint after it well understood—no later than September 26, 2001—that Commonwealth had adequately indicated that it would not arbitrate the grievances. *See Communications Workers of Am., AFL–CIO v. Western Elec. Co.,* 860 F.2d 1137, 1144 (1st Cir.1988) ("The six-month statute of limitations begins to run at th[e] moment" "when the employer takes an unequivocal position that it will not arbitrate.") (citations and internal quotation marks omitted). For its part, the union does not contest that Commonwealth's September 26, 2001 letter provided "unequivocal notice" or that the instant action accrued on that date. The union contends, however, that the action is governed by Massachusetts' six year statute of limitations for breach of contract. *See* Mass. Gen. L. ch. 260, § 2. For the reasons which follow, the court agrees with Commonwealth that section 10(b) applies and, thus, that the union's complaint—filed over six months after Commonwealth indicated that it would not arbitrate—is untimely.

■ Both parties recognize that when section 301 is implicated, as it is here, a court must "borrow the most suitable statute or other rule of timeliness from some other source." *DelCostello v. Intern. Bhd. of Teamsters,* 462 U.S. 151, 158, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (internal quotation marks omitted). When borrowing, a federal court ordinarily applies the most closely analogous state law statute of limitations. *See Communications Workers,* 860 F.2d at 1139. However, "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking," a federal court should not hesitate "to turn away from state law." *DelCostello,* 462 U.S. at 172, 103 S.Ct. 2281.

In *DelCostello,* the Supreme Court applied section 10(b)'s six month statute of limitations to an employee's "hybrid" section 301 and fair representation action because it was "not a straightforward breach-of-contract suit." *Id.* at 165, 103 S.Ct. 2281. The Court viewed the hybrid situation as "a direct challenge to the private settlement of disputes under the collective bargaining agreement" and determined that the six month limitations period would "accommodate a balance of interests" at stake. *Id.* at 165, 169, 103 S.Ct. 2281 (citations and internal quotation marks omitted). A lengthier statute of limitations, the Court explained, "would preclude the relatively rapid final resolution of labor disputes favored by federal law." *Id.* at 168, 103 S.Ct. 2281.

In *Communications Workers,* the First Circuit extended the *DelCostello* analysis to a straightforward section 301 action to compel arbitration. *See Communications Workers,* 860 F.2d at 1145. The First Circuit determined that, "[i]nasmuch as

efficient procedures for arbitration are 'central to the smooth operation of the labor/management process,' efficient procedures to ensure fulfillment of agreements to arbitrate are likewise of the essence." *Id.* at 1141 (quoting *McCreedy v. Local Union No. 971, UAW,* 809 F.2d 1232, 1238 (6th Cir.1987)). The court reasoned that "[t]he objectives of federal labor policy require not only that arbitration be invoked when and as contracted for-but that it be invoked swiftly as well." *Id.* Given those objectives, the court held that section 10(b)'s six month limitations period applies to a section 301 action to compel arbitration. *Id.* at 1145.

■ Perhaps realizing the inevitable application of *DelCostello* and *Communications Workers* to the case at bar, the union urges the court to find that its action is "purely" a breach of contract suit because it merely seeks to have Commonwealth "honor" the CBA. Unfortunately for the union, its argument is not persuasive. Even if Commonwealth is found to have agreed to arbitrate pre-existing grievances, its subsequent refusal cannot be interpreted as a breach of contract in the ordinary sense. "Arbitration clauses are ... *sui generis* and cannot, as a matter of federal law, be viewed as equivalent to more ordinary contractual provisions for limitation purposes." *Id.* at 1141 (citing *Wilson v. Garcia,* 471 U.S. 261, 268, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)). In other words, this is not a "breach of contract" action; rather, Commonwealth's unequivocal refusal to arbitrate commenced the accrual period within which the union had to file an action to compel. *See generally International Ass'n of Machinists & Aerospace Workers v. Caribe Gen. Elec. Prods., Inc.,* 718 F.Supp. 115 (D.P.R.1989).

Perhaps more to the point, the union's self-titled "Complaint to Compel Arbitration" belies its belated attempt to define this action as one for breach of contract. As the union is no doubt aware, in a section 301 action seeking to compel arbitration "the complex, delicately-balanced system of industrial relations comes under siege; the stability of the process is placed at risk; and the need for some efficacious restorative is correspondingly great." *Communications Workers,* 860 F.2d at 1141. Hence, a six month, not a six year, statute of limitations was deemed appropriate. Six years, the court explained in *Communications Workers,* "is simply too long to allow industrial disputes to fester." *Id.* at 1142 (quoting *Associated Brick Mason Contractors of Greater New York, Inc. v. Harrington,* 820 F.2d 31, 37 (2nd Cir. 1987)).

Nonetheless, the union asks the court to apply the First Circuit's earlier holding in *Derwin v. Gen. Dynamics Corp.,* 719 F.2d 484 (1st Cir.1983), where the court borrowed Massachusetts' six year contract limitations period for an action to confirm an arbitration award. Although the union acknowledges that the arbitration had already concluded in *Derwin, see id.* at 490, it suggests that a similar "certainty" exits here, namely, the requests for arbitration, the assignment of an arbitrator and the scheduling of the arbitrations themselves.

Although the union's argument is creative, it is not persuasive. It was the *finality* of the arbitration that led the court in *Derwin* to apply the six year limitations period. Indeed, in doing so, the First Circuit distinguished the need to have a much shorter limitations period when, as here, the pending arbitration itself is in dispute:

[F]ederal policy supports the adoption of limitations periods calculated to encourage the speedy and final resolution of labor disputes, but [Massachusetts'] failure to specify a limitations period for

actions to confirm does not undermine that policy....

. . . .

... Such a statutory scheme is fully consistent with the federal policy of according finality to labor awards. Since a relatively lengthy period for actions to confirm does not threaten the finality of arbitral awards, we see no basis for departing from the ordinary presumption favoring the application of state statutes of limitations to actions arising under section 301.

*Id.* at 489–90 (citations and footnote omitted). This distinction was drawn again in *Communications Workers* where the court expressly rejected the argument that *Derwin* controlled a section 301 action to compel arbitration. The court explained that, in *Derwin,*

the scales were weighted differently. An action to confirm arbitration takes place *after* the processes of dispute resolution have run their course.... For that reason, applying a relatively lengthy statute of limitations to confirmation actions does not implicate the finality of arbitral awards. This, of course, was among our core concerns in *Derwin,* for that very finality would be disserved by establishing a crabbed limitation period after which an award could not be confirmed.

*Communications Workers,* 860 F.2d at 1143–44 (emphasis in original).

In sum, the instant action to compel arbitration, as in *Communications Workers,* is subject to section 10(b)'s six month limitations period. As indicated, the union's action was filed more than six months after Commonwealth took the unequivocal position in its September 26, 2001 letter (if not before) that it would not arbitrate. Accordingly, the court concludes that the union's action is barred by the statute of limitations and, therefore, will enter summary judgment in Commonwealth's favor.

IV. CONCLUSION

For the foregoing reasons, the union's motion for summary judgment is DENIED and Commonwealth's motion for summary judgment is ALLOWED.

IT IS SO ORDERED.